GLASER et al. v. ST. ELMO CO., Inc., et al.

(Circuit Court, S. D. New York. December 20, 1909.)

1. COPYRIGHTS (§ 36*)—EXPIRATION—NOVELS.

On the expiration of the copyright of a novel, any person may use the plot for a play, copy or publish it, or make any other use of it he sees fit.

[Ed. Note.—For other cases, see Copyrights, Dec. Dig. § 36.*]

2. COPYRIGHTS (§ 65*)—EXPIRATION—PLAYS.

Where a copyrighted play had been made, based on the plot and incidents of a novel the copyright of which had expired, another author, though entitled to use the plot and incidents of the novel for a different play, could not make use of the first play in constructing the second.

[Ed. Note.—For other cases, see Copyrights, Cent. Dig. § 62; Dec. Dig. § 65.*]

3. COPYRIGHTS (§ 37*)—BOOKS—TITLE.

The copyright of a book does not prevent others from taking the same title for another book, though the copyright has not expired.

[Ed. Note.—For other cases, see Copyrights, Cent. Dig. § 38; Dec. Dig. § 37.*]

4. COPYRIGHTS (§ 37*)—NAME OF BOOK—EXPIRATION—PLAY.

Where a copyrighted play was taken from the novel "St. Elmo," the copyright of which had expired, the owners of the play were not entitled to restrain defendants from using the same name for an entirely different play constructed on the plot and incidents of the novel, on the theory that the name was protected by the copyright of the play.

[Ed. Note.—For other cases, see Copyrights, Cent. Dig. § 38; Dec. Dig. § 37.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep't Indexes

**5.** TRADE-MARKS AND TRADE-NAMES (§ 75*)—UNLAWFUL COMPETITION.

Where complainants used the name "St. Elmo" as the name of a copyrighted play based on the plot and incidents of the novel by that name, the use of the same name by defendants in the production of a different play constructed from the same novel, in connection with a notice, however, that defendants were the authors and producers, and that it was not complainants,' did not constitute unlawful competition. ·

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 86; Dec. Dig. § 75.*]

In Equity. Suit by Vaughan Glaser and another against the St. Elmo Company, Incorporated, and others, to restrain the production of a play. Motion denied.

Nathan Burkan, for complainants.

Herman L. Roth (Arnold Lichtig, of counsel), for defendants.

HOLT, District Judge. This is a motion for a temporary injunction to restrain the defendants from producing a play called "St. Elmo." Augusta J. Evans, prior to November 22, 1866, wrote a novel, which she named "St. Elmo," for which she took out a copyright on that date. The novel had a large sale, particularly in the southern states. At the expiration of 28 years, the original term of the copyright, the author duly renewed it for an additional period of 14 years. The copyright of the novel, therefore, expired in the year 1908. By the provisions of the copyright act, the author had the right to dramatize the novel at any time during the term of the copyright. In 1907 said Augusta J. Evans authorized a dramatization of said novel to be made by John P. Ritter, and this play was given the same title as the novel, "St. Elmo." The play so constructed from the novel was copyrighted as a play on July 10, 1907, before the expiration of the copyright of the novel. The copyright of the play is now owned by the complainants. After the expiration of the copyright of the novel, in 1908, the defendant Neil Twomey also wrote a play based on the incidents of the novel, and called it "St. Elmo." The plaintiffs' play "St. Elmo" has been produced, and the complaint alleges that it has been a popular and successful play in the Southern states and other parts of the country. The defendants' play "St. Elmo" has also been produced on the stage, and the plaintiffs allege that its production has impaired the success of the complainants' play, and reduced the profits which they would have otherwise obtained from its production.

As above stated, the author of the novel, by the terms of the copyright act, had the exclusive right to dramatize the novel during the term of the copyright. She had the novel dramatized by a person who was acting with her co-operation and consent. The play, when completed, was copyrighted as a play, and plaintiffs' play called "St. Elmo," therefore, was protected from piracy by the provisions of the copyright act. By the expiration of the term of the copyright of the novel, however, any person could make any use of the novel which he saw fit. He could copy it, or publish it, or make a play out of it. It was no longer protected by the copyright act. But although a person could

make a play from the novel, using its plot and incidents in such play, he could not copy the play of "St. Elmo" already written and copyrighted, further than to make such a general use of the plot and incidents of the novel as was open to the public generally.

The first question in this case, therefore, is whether the second play called "St. Elmo" infringes the copyright of the first play of that name. I have examined the two plays in evidence. There is nothing in the general structure of the two plays to indicate that the second play was copied from or imitated the first play, or that any use was made of the first play in constructing the second play. The author of the second play, in an affidavit, denies that he ever read or made any use of the first play. There is no other similarity between the two plays than would naturally be expected in two plays constructed by different persons from the same novel. The claim, therefore, that the defendants should be enjoined from producing their play on the ground that it infringes the copyright of the complainants' play, is untenable. Nixon v. Doran (C. C.) 168 Fed. 575.

The complainants claim, however, that, as they have a legal copyright of a play named "St. Elmo," the defendants have no right to apply the name "St. Elmo" to the play produced by them. There is some doubt, under the authorities, whether a person who has a valid copyright in a book or play has an exclusive right to the title. Some cases hold that the title of a book or play is a part of the thing copyrighted, and that no other person can adopt such title. Weldon v. Dicks, L. R. 10 Ch. Div. 247; Estes v. Williams (C. C.) 21 Fed. 189. Other authorities hold that a copyright only extends to a literary production, and that a mere title of a book is not a subject of copyright. Harper v. Ranous (C. C.) 67 Fed. 904; Corbett v. Purdy (C. C.) 80 Fed. 901; Black v. Ehrich (C. C.) 44 Fed. 793; Dicks v. Yates, L. R. 18 Ch. Div. 76; Osgood v. Allen, Fed. Cas. No. 10,603; Copinger's Law of Copyright (4th Ed) p. 64; 9 Cyc. p. 928, and cases cited. And see Jollie v. Jaques, Fed. Cas. No. 7,437.

I think that the authorities, particularly the American cases, preponderate that the copyright of a book does not prevent other persons from taking the same title for another book, even in the case of an entirely unexpired copyright. In this case, the copyright of the novel having expired, and it being open to any one to write a play based on the novel, I think it still more doubtful whether the complainants, by writing and copyrighting a play, to which they have given the same title as the novel, can prevent the defendants from giving the name of the novel to an entirely different play which has been constructed from the novel. Still other authorities take the view that the author or proprietor of a book has a right to exclude others from adopting the same title for another book on the ground that it constitutes a trade-mark, or that its use by another constitutes unfair competition in trade. Merriam v. Famous Shoe Co. (C. C.) 47 Fed. 411; Metzler v. Wood, L. R. 8 Ch. Div. 606; Social Register Ass'n v. Howard (C. C.) 60 Fed 270; Copinger's Law of Copyright (4th Ed.) p. 64, and cases cited. And see Merriam v. Holloway Pub. Co. (C. C.) 43 Fed. 450.

It is claimed by the complainants in this case that the defendants' adoption of the title "St. Elmo" for their play, and their production of a play with such a title, constitutes unfair competition in trade. But I doubt whether this doctrine applies in the case of plays made from novels the copyright of which has expired. Suppose that two plays were written based on an old novel, for instance, Don Quixote, or Clarissa Harlow, or Quentin Durward, and that both such plays were given the title of the story from which they were taken. Would not the author of each play have the right to give his play the name of the novel on which it was based, particularly if each made proper public announcement that he was the author of that play? The rule is well settled that, on the expiration of a patent for an article which has become identified by some particular name, as the name of the inventor, although it is open to the public to manufacture the patented article, and to call it by the name by which it is commonly known, it is unfair competition to do so unless the person making the article affixes to it a plain notice that it is not made by the owner of the original patent, but by some one else. Singer Mfg. Co. v. June Mfg. Co., 163 U. S. 169, 16 Sup. Ct. 1002, 41 L. Ed. 118; Merriam v. Famous Shoe, etc., Co. (C. C.) 47 Fed. 411. The same rule has been applied to copyrights. Merriam Co. v. Ogilvie, 159 Fed. 638, 88 C. C. A. 596, 16 L. R. A. (N. S.) 549. But in this case, upon all the advertisements and notices of their play put out by the defendants, they publish the fact that it was written by Neil Twomey, and I think that the proof shows that, if the principle announced in the case of Singer Mfg. Co. v. June Mfg. Co. is applicable to the case of a copyright, the rule there laid down has been complied with by the defendants.

The question involved on this motion is at least too doubtful to authorize a preliminary injunction. The motion is denied

