## G. RICORDI & CO. v. PARAMOUNT PICTURES, Inc.

No. 157, Docket 21884.

United States Court of Appeals Second Circuit.

Argued Feb. 9, 1951.

Decided May 8, 1951.

On Petition for Clarification June 1, 1951.

Phillips, Nizer, Benjamin & Krim, New York City, Louis Nizer, Paul Martinson and Bernard Segelin, all of New York City, of counsel, for appellant.

Arthur E. Garmaize, New York City, for appellee.

Before L. HAND, Chief Judge, and SWAN and FRANK, Circuit Judges.

SWAN, Circuit Judge.

This is a suit for a declaratory judgment with respect to motion picture rights in the copyrighted opera "Madame Butterfly," the renewal copyright of which is owned solely by the plaintiff. Federal jurisdiction is claimed on diversity of citizenship, the plaintiff being a partnership composed of Italian citizens and the defendant a New York corporation. After answer, both parties moved for summary judgment upon the pleadings, affidavits and exhibits. The district court granted the plaintiff's motion and awarded a judgment declaring the plaintiff to be the exclusive owner of motion picture rights in the renewal copyright of the opera and enjoining the defendant from interfering with the plaintiff's exercise of such rights. The defendant has appealed.

There is no dispute as to the facts. In 1897 John Luther Long wrote a novel entitled "Madame Butterfly," which was published in the Century Magazine and copyrighted by the Century Company. In 1900 David Belasco, with the consent of the copyright owner, wrote a play based upon the novel and having the same title. The play was not copyrighted until 1917. In 1901 Long and Belasco made a contract with the plaintiff by which they gave it "the exclusive rights * * * to make a libretto for an Opera of his [Belasco's] dramatic version of Madame Butterfly, founded on the original theme, written by Mr. John Luther Long * * * the said Libretto and all rights therein, dramatic or otherwise, to be the exclusive property of Messrs. G. Ricordi & Company for all countries of the world." It is upon this agreement that the plaintiff grounds its claim to motion picture rights in the world-famous opera, with music and lyrics by Puccini in collaboration with Giacosa and Illica, which was copyrighted by the plaintiff in 1904, and of which the renewal copyright was acquired by the plaintiff from the son of Puccini.

The defendant does not deny that the plaintiff is the sole owner of the renewal copyright of the opera but it asserts that it owns the motion picture rights in the John Luther Long basic story and in the Belasco dramatic version thereof, and, consequently, if the plaintiff wishes to make a motion picture version of the opera, the defendant's consent must be obtained for the use of the Long novel and the Belasco play. Its primary contentions are two: (1) that the 1901 agreement of Long and Belasco with the plaintiff did not grant any motion picture rights; and (2) that in any event the expiration in 1925 of the copyright of Long's novel and the expiration in 1945 of the copyright of Belasco's play put an end to any exclusive license of the plaintiff to use the novel and the play for a motion picture version of the opera. Long had obtained in 1925 a renewal of the copyright on his novel and in 1932 his administrator granted to the defendant the motion picture rights therein. In the same year, 1932, the defendant obtained from the trustee under Belasco's will an assignment of the motion picture rights in Belasco's play. So far as appears there was no renewal of copyright in the play.

The district court was of opinion that the primary question for decision was whether the 1901 agreement granted to the plaintiff motion picture rights in the oper-

atic version of the novel and of Belasco's dramatization of it. After an extensive review of the authorities, the court concluded that it did. The appellant argues strenuously that the court erred in so construing the agreement, but we do not find it necessary to decide this question. The right which Long had to make motion pictures of the story of his copyrighted novel did not extend beyond the term of the copyright; hence, if it be assumed that he assigned to the plaintiff any moving picture rights, they were necessarily similarly limited to the term of the copyright, unless the assignment included the right of renewal. It did not; the 1901 agreement made no allusion to renewal of copyright. In Fred Fisher Music Co. v. M. Whitmark & Sons, 318 U.S. 643, 63 S.Ct. 773, 87 L.Ed. 1055, which held that an author has power to assign his right of renewal during the term of the original copyright, no one suggested that rights assigned under the original copyright did not end with it, if nothing was said of renewal. We think they do. A copyright renewal creates a new estate, and the few cases which have dealt with the subject assert that the new estate is clear of all rights, interests or licenses granted under the original copyright.[1] It is true that the expiration of Long's copyright of the novel did not affect the plaintiff's copyright of so much of the opera as was a "new work" and entitled to be independently copyrighted as such.[2] But the plaintiff has acquired no rights under Long's renewal of the copyright on his novel and the plaintiff's renewal copyright of the opera gives it rights only in the new matter which it added to the novel and the

play. It follows that the plaintiff is not entitled to make general use of the novel for a motion picture version of Long's copyrighted story; it must be restricted to what was copyrightable as new matter in its operatic version.[3]

The next question is whether the plaintiff's right to make use of Belasco's play for a motion picture version thereof is similarly restricted to what was copyrightable as new matter in its operatic version. After Long's novel was copyrighted, Belasco was given permission—a license—to make use of the story for a play. Apparently the license was oral and its precise terms are not disclosed by the record. If it be assumed that the license gave Belasco any motion picture rights, they were necessarily limited to the term of the copyright of the novel. However, Belasco as author of the play had the common law rights of an author, which include the right to copyright it. This was done in 1917. By so doing the play was dedicated to the public except for the rights reserved by the copyright, for that is the condition upon the grant of any copyright.[4] When the copyright expired, the play was property in the public demesne, since the record discloses no renewal of the copyright. Consequently, the exclusive motion picture rights in the play, which the trustee under Belasco's will assigned to the defendant by the 1932 agreement, expired in 1945 with the expiration of the copyright of the play. Thereafter the plaintiff was as free to use the play as was the defendant in making a motion picture version of the play.

However, the defendant still has the motion picture rights in the renewal copyright

1. See Fitch v. Shubert, D.C.N.Y., D.C., 20 F.Supp. 314, 315; Fox Film Corp. v. Knowles, D.C.N.Y., 274 F. 731, 732, reversed on other grounds, 261 U.S. 326, 43 S.Ct. 365, 67 L.Ed. 680; Ball, Law of Copyright and Literary Property, p. 535. Cf. In re Paper Bag Cases, 105 U.S. 766, 26 L.Ed. 959; Silverman v. Sunrise Pictures Corp., 2 Cir., 273 F. 909; White-Smith Music Pub. Co. v. Goff, 1 Cir., 187 F. 247.

2. The Act of 1947, 61 Stat. 652, 655, 17 U.S.C.A. § 7, formerly section 6 of the

Act of 1909, 35 Stat. 1077. Edmonds v. Stern, 2 Cir., 248 F. 897.

3. See McCaleb v. Fox Film Corp., 5 Cir., 299 F. 48, 49; Glaser v. St. Elmo Co., Inc., C.C.S.D.N.Y., 175 F. 276, 277. The statute expressly provides that a copyright on a new work shall neither extend nor be construed to imply an exclusive right to use the original work from which the new work is derived. 17 U.S.C.A. § 7.

4. See Holmes v. Hurst, 174 U.S. 82, 85, 19 S.Ct. 606, 43 L.Ed. 904; Bobbs-Merrill Co. v. Straus, 2 Cir., 147 F. 15, 18–19, 15 L.R.A., N.S., 766.

of Long's novel. Therefore it may assert, as it did, that the plaintiff cannot make general use of the story of the novel for a motion picture version of its opera; and, as already stated, the plaintiff is restricted to using what was copyrightable as new matter in its operatic version of the novel but is not so restricted in using the play which is now in public demesne. It scarcely need be added that the defendant, while free to use the novel and the play in making a motion picture, may not make use of the plaintiff's opera without its consent.

The remaining contentions of the parties have been examined and found without merit. Discussion of them is deemed unnecessary.

So much of the judgment as declares that the plaintiff is "the rightful owner and sole proprietor of the valid renewal copyright in the Opera entitled Madame Butterfly and of all rights and interest therein including the sole and exclusive motion picture rights" is affirmed. The injunction granted the plaintiff is too broad unless it be construed to forbid only such assertions of claims by the defendant as exceed those which the defendant is entitled to make as shown by the foregoing opinion. Accordingly the injunction is modified to conform to our opinion. Each party shall bear its own appellate costs and no attorney's fees are awarded to either party.

### On Petition for Clarification

Paramount Pictures, Inc., asks for a clarification of that part of our opinion relating to the expiration and dedication of Belasco's copyright. We there said: "When the copyright expired, the play was property in the public demesne, since the record discloses no renewal of the copyright." What the petitioner desires is an express statement that only the new matter which Belasco's play added to Long's novel came into the public demesne upon the expiration of Belasco's copyright. It is implicit in the opinion as a whole that what is dedicated to the public as a condition of obtaining a copyright is only such matter as is copyrightable, but to avoid any possible cavil we will amend the above quoted sentence to read as follows: "When the copyright expired, the copyrightable new matter in the play was property in the public demesne, since the record discloses no renewal of the copyright".