### SHAPIRO BERNSTEIN & CO., Inc. v. JERRY VOGEL MUSIC CO., Inc.

United States District Court,
S. D. New York.

July 27, 1953.

On Cross-Motions Sept. 24, 1953.

756

Spring & Eastman, New York City (Lee V. Eastman, Alfred Beekman and E. Gabriel Perle, New York City, of counsel), for plaintiff.

Edwin McMahon Singer, New York City (Edwin McMahon Singer and Leo E. Falkin, New York City, of counsel), for defendant.

LEIBELL, District Judge.

This is an action for copyright infringement. It involves the renewal copyrights in the instrumental music of "12th Street Rag" composed by Euday L. Bowman in 1914 and the renewal copyright of a song bearing that title, copyrighted by a music publisher, J. W. Jenkins Music Co. in September 1919.

Bowman assigned his right and title to the copyrights of the instrumental music to the Jenkins Co. in July 1916. In the Fall of 1918 the Jenkins Co., without the authorization or consent of Bowman, had James S. Sumner write a lyric for Bowman's music and copyrighted the "song" in September 1919. The plaintiff subsequently acquired from Bowman and Jenkins all of Bowman's renewal interests in the copyright of the instrumental music written by Bowman and obtained through Bowman the renewal copyrights therein. Plaintiff also claims renewal rights in the song, "12th Street Rag", by assignment from the Jenkins Co.

In June 1947 defendant Vogel obtained from Sumner a paper purporting to assign all of Sumner's right, title and interest in the "song", including the renewal rights. Defendant thereupon filed a claim with the Register of Copyrights to the renewal rights in the song, and thereafter published the song with Bowman's music and Sumner's lyric. Plaintiff then brought this suit for copyright infringement.

The complaint contains two causes of action. Plaintiff's first cause of action is for infringement of the renewal copyrights of Bowman's instrumental music "12th Street Rag". Plaintiff's second cause of action is for infringement of plaintiff's claimed renewal rights in the song "12th Street Rag", consisting of Bowman's music and the lyric by Sumner. The complaint herein was filed August 18, 1949.

Defendant has counterclaimed for a declaratory judgment that it is a co-owner of an undivided 50% interest in the song, and for an accounting by plaintiff of its profits, and for an injunction against plaintiff.

The action was tried before me in May of this year and counsel exchanged and submitted briefs and proposed findings in June. The above is an outline of the claims of the parties. Their contentions in respect thereto will be discussed more in detail in this opinion. Findings of Fact and Conclusions of Law are being filed herewith.

One of the most contested issues of fact in this case is this:—Did Sumner write the lyric for the "12th

Street Rag" as part of his duties as an employee of J. W. Jenkins Sons Music Co., or did he write it as a special job assignment for which he was paid a sum of money in addition to his regular salary? I have concluded—and the deposition of Mr. Ege, the former publication manager of Jenkins, when analyzed, supports the conclusion—that Sumner wrote the lyric as a special job assignment, outside the line of his regular duties; that he was paid $25 by the Jenkins Co. for the lyric and his rights therein; and that the payment was in addition to the regular salary he was receiving at that time as an employee of the Jenkins Co.

Bowman, who composed the music of the "12th Street Rag" as an instrumental work, copyrighted his music as an unpublished work January 30, 1914, and as a published work August 31, 1914. He obtained a further copyright of the music, an arrangement and adaptation thereof, January 21, 1915. Bowman assigned his copyrights to the Jenkins Co. on July 11, 1916.

When the Jenkins Co. filed a copyright application for the "song", "12th Street Rag" on September 2, 1919, the application listed Bowman as the composer of the music and Sumner as author of the words, and the certificate of copyright issued to the Jenkins Co. was for the "12th Street Rag". * * * "Words by James S. Sumner". * * * "Music by Euday L. Bowman". As will be shown later, Bowman never authorized or consented to the writing of the Sumner lyric for his musical composition, "12th Street Rag".

When the Jenkins Co. specially engaged Sumner to write words for the instrumental music composed by Bowman, the Jenkins Co. was exercising a right incident to its proprietorship over the Bowman copyrights. The musical composition consisting of Bowman's instrumental music and Sumner's lyric was registered as a "new work", pursuant to Sec. 6 of the Copyright Act of 1909, which corresponds to Sec. 7 of the Copyright Act of 1947, 17 U.S.C.A. § 7, as it exists today. What the copyright of the "new work" served to protect, was the new matter, in this case, the lyric written by Sumner. Adventures in Good Eating v. Best Places to Eat, 7 Cir., 131 F.2d 809, 813; G. Ricordi & Co. v. Paramount Pictures Inc., 2 Cir., 189 F.2d 469, certiorari denied 342 U.S. 849, 72 S.Ct. 77, 96 L.Ed. 641.

All that Sumner sold to Jenkins was his right to copyright the lyric for "12th Street Rag". There was no formal agreement between Sumner and Jenkins. Sumner did not part with his renewal interest in the lyric of the song "12th Street Rag". Defendant, as Sumner's assignee and attorney in fact, could exercise whatever rights Sumner had. When the defendant, in June 1947, acting under an assignment from Sumner, filed for a renewal on the "song", including Bowman's music, defendant was claiming something more than Sumner possessed, because Bowman and Sumner were not "joint authors" of the song. That brings us to the next important issue in this case.

It is defendant's contention that Sumner was a "joint author" with Bowman in the composition of the "song"; that the song was properly copyrighted as a "new work"; that Sumner by his renewal through defendant acquired a half interest in the "song"; and that defendant by virtue of the assignment from Sumner now has that one half interest and may publish the "song", consisting of the music composed by Bowman and the lyric written by Sumner, accounting to the plaintiff for one half the profits.

The defendant argues that because the Jenkins Co. "joined" the Sumner lyric to the Bowman music, both of which Jenkins owned, and obtained a copyright for the resulting "song", the copyright was that of a "joint work" as that term is understood in copyright law; and that Jenkins' action had the same legal effect as if Bowman had requested Sumner to write the lyric or as if Bowman had authorized the Jenkins

758

Co. to get some one to write a lyric for the Bowman music.

Even though at the time the Jenkins Co. engaged Sumner to write the lyric, the Jenkins Co. had already (July 11, 1916) received an assignment from Bowman which covered the Bowman copyrights for their original term and Bowman's renewal interests in the music, that did not make the "song", the combination of the Bowman music and the Sumner lyric, a "joint work" of Bowman and Sumner, because Bowman never authorized or consented to the writing of the Sumner lyric for Bowman's music. The song was a "composite work".

In Edward B. Marks Music Corp. v. Jerry Vogel Music Co., 2 Cir., 140 F.2d 266, Judge L. Hand expressly reaffirmed his acceptance of the definition of "joint authorship" as it was laid down in Levy v. Rutly, L. R., 6 C.P. 523. "Joint authorship" was defined in that case by Keating, J., at p. 529 as being a "joint laboring in furtherance of a common design", and by Montague, J., at p. 530 as an agreement "to write a piece, there being an original joint design".

In the Marks case, Edward B. Marks had composed the words for a song. He sold his lyric "December and May," to Harding, a publisher of songs in 1893. The latter, without the knowledge of Marks, engaged one Loraine to compose a melody for the words. The song, consisting of the music by Loraine and the lyric by Marks, was copyrighted by Harding in November 1893. It was established that Marks intended that his lyric should be set to music, which someone else would compose. Loraine understood that the music he was composing was for use with those particular words, the lyric written by Marks. Marks and Loraine did not meet until years later. Within the statutory time Marks applied in November 1920 for a renewal copyright upon the song, "December and May," as a musical composition and assigned his renewal copyright to the Marks Corp. Loraine never applied for a renewal but assigned all his rights in

the song to Vogel in July 1940. Vogel published the song and the Marks Corp. sued Vogel for infringement.

The Circuit Court of Appeals held that the "song" was the product of "joint authorship", and that the Marks Corp. held the renewal copyright for itself, as to the share of Marks, and upon a constructive trust for Loraine as to his share; and that Marks could not forbid Loraine's assignee (Vogel) from exploiting the subject matter of their right. In reaching that conclusion, the Court stated that the authors of a joint work need not work in concert or even know of each other's existence:—"It is enough that they mean their contributions to be complementary in the sense that they are to be embodied in a single work to be performed as such." Judge Hand stressed the necessary purpose that each author should have in preparing his particular contribution to the joint work, explicitly ruling that if the first part of a work, to which two different persons devote their talents, is composed without any such common design, the combination of the two is a "composite work". But this is "not so, when both plan an undivided whole". Whether or not the combined work product of two authors is to be adjudged their "indivisible product", turns on the intent each had in mind in respect to his share of the unitary whole. Unless each had the intent that his work would be complementary to the work of another, the resulting work is not a "joint work" but a "composite work". It is not the intent of the publisher of a song that is determinative; it is the intent of the composer of the music and the author of the lyric.

In Shapiro, Bernstein & Co. v. Jerry Vogel Music Co., 2 Cir., 161 F.2d 406, 408, certiorari denied 331 U.S. 820, 67 S. Ct. 1310, 91 L.Ed. 1837, Ernie Burnett had written a melody, for which Maybelle Watson (his wife) wrote the words of a song entitled "Melancholy". The song was copyrighted in October 1911 in Burnett's name as an unpublished work. That version of the song was never pub-

lished but the copyright was renewed many years later by both, Burnett, the composer, and Watson, the author of the lyric. Long prior thereto, in 1912, Burnett offered the song to a publisher, Bennett. Bennett did not like the lyric and with Burnett's consent he engaged George A. Norton to write a new lyric. Norton assigned his copyright, including renewals, to Bennett, and Burnett assigned the 1911 copyright to Bennett with the statement "lyrics now by Geo. A. Norton". In 1939 Burnett registered a claim for renewal of copyright on the 1912 version with the Norton lyric, and assigned his renewal copyright to Shapiro, Bernstein, Inc. Norton's son assigned his renewal rights to Vogel. Vogel claimed a co-ownership with Shapiro, Bernstein in the renewal copyright. Plaintiff in that action insisted that the authorship there involved could not be a joint one. The appellate court took the view that neither the discarding of the original lyric written by Watson, nor the lapse of time between the composition of the melody and writing of the Norton lyrics, was of any importance, once it was established that Burnett had composed the melody and intended that his melody should be supplemented by a lyric.

That holding serves to emphasize a prerequisite to the existence of a "joint work", namely, the intention on the part of the first author, either at the time he creates his work or thereafter, that his work be complemented by the contribution of some one else. This principle applies where, as in the Marks case, supra, the lyric is first written and is intended by the author to be published, not as a poem, but as the words of a song for which the music is later to be written by another person; and where, as in the Burnett case, the music is written as the melody of a song and it is intended by the composer to be published together with a lyric to be written for it by another person.

The record before me is devoid of any proof that Bowman composed the music for the "12th Street Rag" with the intention that lyrics be added to it. All the proof is to the contrary. Bowman had written "12th Street Rag" as an instrumental piece for the piano and for orchestra. He had it published as such while he owned the copyrights, before he sold them to the Jenkins Co. He was capable of writing lyrics himself and had done so for other musical compositions he had composed. (See Exs. 33, 34 and 35). Bowman's assignment and bill of sale to Jenkins included "all title plates and music plates * * * for piano, and the orchestra and band plates". The assignment and bill of sale contained no mention of any lyrics or any authorization to have any lyrics written for the music. There is no proof that Bowman after his assignment to Jenkins, ever authorized the Jenkins Co. to have lyrics written for the music. All the proof supports an inference to the contrary.

When the Jenkins Co. had the Sumner lyric written for Bowman's music, it did so on its own initiative, to comply with the request of some performers who were putting on a vaudeville act in a local theatre in Kansas City, which has a 12th Street. The Jenkins office was in Kansas City and Sumner worked among theatrical performers in the local theatres to "push" the music published by Jenkins. Sumner brought the request to the attention of the Jenkins Co. and Mr. Ege of that company asked Sumner to write a lyric for the Bowman music. Bowman was never consulted on the matter.

Under the principles laid down in the decided cases I am satisfied that the song "12th Street Rag" was a "composite work", not a joint work. Sumner was not a joint author of the "song". All that Sumner could assign to Vogel was Sumner's renewal interest in the lyric. Neither Sumner nor Vogel had any right to publish the music of the "12th Street Rag" in connection with the Sumner lyric.

I have considered the construction to be given to the document of July 11, 1916 (Ex. 9) under which Bowman sold

and assigned certain rights and things to the Jenkins Co. It states that for a consideration of $300 Bowman does "sell and assign" to the Jenkins Co. all his "right and title in and to the musical composition '12th Street Rag'" and two other compositions of which he was the "composer and sole owner". The assignment also covered all his rights to a 2¢ royalty for recordings. The last paragraph of the document reads:—"It is further agreed that this contract carries with it all extensions of copyrights that may be secured on these compositions".

■■ The document is on the letterhead of the Jenkins Co. and was prepared by that company. What is the meaning of the word "extensions"? The document should be construed most strictly against the one preparing it. Moreover "the circumstances justifying the transfer of the right of renewal must be stronger than those justifying the transfer of the copyright, since the right of renewal is separate from the original copyright". Rossiter v. Vogel, 2 Cir., 134 F.2d 908; Shapiro, Bernstein & Co. v. Bryan, 2 Cir., 123 F.2d 697.

■ I am of the opinion that the assignment and bill of sale Bowman executed July 11, 1916, included his renewal interests in the copyrights of his instrumental music "12th Street Rag", although the word "renewal" was not used in the document. Bowman had the right on July 11, 1916 to assign his interest in the renewal term of the copyright before he had secured it. Fred Fisher Music Co. v. M. Witmark & Sons, 318 U.S. 643, 63 S.Ct. 773, 87 L.Ed. 1055. The language used in the assignment of July 11, 1916 was:—"all extensions of copyrights * * * that may be secured on" the said compositions. Those words would have no meaning unless they encompassed the renewal term of the Bowman copyrights. The words "extensions" and "renewals" have been used interchangeably in text books on Copyright Law and in judicial opinions. The attorneys in the case at bar seem to have reached the same conclusion as to the meaning and scope of the last paragraph of the July 11, 1916 document.

■ The grant obtained through the renewal of a copyright is a "new estate", one which is acquired free and "clear of all rights, interests or licenses granted under the original copyright." G. Ricordi & Co. v. Paramount Pictures, Inc., 2 Cir., 189 F.2d 469, 471, certiorari denied 342 U.S. 849, 72 S.Ct. 77, 96 L. Ed. 641; Fitch v. Shubert, D.C.S.D.N. Y., 20 F.Supp. 314; Silverman v. Sunrise Pictures Corporation, 2 Cir., 273 F. 909, certiorari denied 262 U.S. 758, 43 S. Ct. 705, 67 L.Ed. 1219. A publisher, who is the owner of a copyright of a "new work", is entitled to the exclusive use of the old material in conjunction with the new, only during the original term of the copyright of the old material, unless he acquired the renewal interest of the author of the old material. See G. Ricordi & Co. v. Paramount Pictures, Inc., supra.

■ Since Sumner was not Jenkins' employee for hire, Jenkins had no renewal interest in the Sumner lyric. Jenkins copyrighted the "song" in 1919. Jenkins' purported assignment to plaintiff of Jenkins' rights in the song was a nullity, in so far as it involved any period beyond the expiration of the original twenty-eight years of the lyric copyright. Defendant did not publish the song until 1947, apparently after the expiration of said original twenty-eight year period.

■ The Conclusions of Law filed herewith provide that the plaintiff's second cause of action be dismissed and that defendant's counterclaim be dismissed. Plaintiff is entitled to an interlocutory decree on its first cause of action granting judgment as provided in

detail in Conclusion of Law number XIII.[1]

The interlocutory decree will provide for a reference to a Special Master to hear the proof of the parties in relation to damages and profits, and to report his findings thereon to the Court, unless the parties are able to agree on the amount of plaintiff's damages and the amount of defendant's profits.

Settle an interlocutory decree accordingly.

## On Cross-Motions for Amendment of Conclusions of Law

The Court's opinion in this action, and separate Findings of Fact and Conclusions of Law, were filed July 27, 1953. Familiarity therewith will be assumed.

Conclusion of Law No. XII and that portion of Conclusion of Law No. XIII which is pertinent to defendant's present motion, stated:

"XII. Defendant is not entitled to any of the relief prayed for in its counterclaim and the counterclaim will be dismissed on the merits.

"XIII. Plaintiff is entitled to judgment against defendant as follows:—

\* \* \* \* \* \*

"(d) Defendant shall pay to plaintiff all its legal costs and disbursements in this action, together with a reasonable attorney's fee for the legal services of plaintiff's attorneys in this action, the amount of said fee to be awarded by the Court on proper application."

Defendant has moved under Rule 52 (b) of the Federal Rules of Civil Procedure, 28 U.S.C.A., for an order amending the above conclusions of law—

" \* \* \* by striking out paragraph 'XII' of the Conclusions of Law and by substituting therefor a Conclusion of Law granting to the defendant judgment on its counterclaim to the extent of declaring that the defendant is the sole and exclusive owner of the Sumner lyric to '12th Street Rag' and of the renewal copyright of said lyric, and requiring the plaintiff to deliver up for destruction all copies, plates, molds and other means for making copies of the song '12th Street Rag' containing the Sumner lyric, and, further, by elminating from paragraph 'XIII' of said Conclusions of Law the direction that the defendant pay to the plaintiff all its legal costs and disbursements in the action together with a reasonable counsel fee; \* \* \*."

In the alternative defendant moves "for a new trial, pursuant to Rule 59(a) of the Rules of Civil Procedure, on the ground that the Court erred in dismissing the defendant's counterclaim on the merits" and in failing to amend its Con-

---

1. "XIII. Plaintiff is entitled to judgment against defendant as follows:

(a) Defendant, its agents and servants, shall be permanently enjoined from publishing or using the song version of the "12th Street Rag" in any manner, and from publishing, printing, copying, selling, offering for sale, marketing or in any other manner, either directly or indirectly, using the Bowman music of the "12th Street Rag" separately or in conjunction with the Sumner lyric or with any other lyric;

(b) Defendant shall be required to pay to plaintiff such damages as plaintiff has suffered due to defendant's infringement of plaintiff's renewal copyrights and each of them, and shall account for and pay over to plaintiff all gains and profits of the song "12th Street Rag", made by defendant from its said infringements; or in lieu of the foregoing such damages as to the Court shall appear to be just to be assessed as provided in the Copyright Act;

(c) Defendant shall be required to deliver up for destruction all copies, plates, molds and other means for making such infringing copies, together with all the printed infringing copies of the song "12th Street Rag";

(d) Defendant shall pay to plaintiff all its legal costs and disbursements in this action, together with a reasonable attorney's fee for the legal services of plaintiff's attorneys in this action, the amount of said fee to be awarded by the Court on proper application.

clusions of Law as requested by the defendant on its present motion.

Plaintiff, in turn, has cross-moved for an order amending Conclusions of Law Nos. V, VII and VIII "so as to make specific that defendant Vogel" never acquired from its assignor Sumner "any right, title or interest whatever in and to the title of the composition, '12th Street Rag'."

I shall first pass upon the defendant's motion.

In its counterclaim defendant alleged that it was the co-owner with plaintiff of the musical composition "12th Street Rag" consisting of music composed by Euday L. Bowman and lyrics written by James S. Sumner, by virtue of the latter's assignment to defendant of all his right, title and interest in and to the renewal copyright in the aforementioned musical composition. The claim of co-ownership was based on the contention that the "song", was a "joint work" and not a "composite work". In paragraph 1 of defendant's prayer for relief defendant prayed:—

"1. That it be adjudged and decreed that the defendant is a co-owner of an undivided 50% interest in the said musical composition entitled '12th Street Rag' consisting of the lyrics by James S. Sumner and the music purportedly written by the said Euday L. Bowman and in the copyright thereon."

In the course of my opinion I held that defendant is the sole owner of all right, title and interest in and to the lyric written by Sumner and to the renewal copyright thereon, but that defendant had no interest in, nor could it make use of the melody composed by Bowman. Accordingly, I dismissed defendant's counterclaim on the merits.

Defendant contends that the provisions of Rule 54(c), Fed.Rules Civ.Proc. Title 28 U.S.C.A.[2] entitle it to the relief described in defendant's proposed amended Conclusion of Law No. XII, and that as a result, defendant must be considered a prevailing party in the action, along with the plaintiff. Defendant further argues that as a consequence neither party should be allowed costs or attorney's fees.

Defendant's argument that it too prevailed on the action must be evaluated in the light of the proof adduced on the trial. The record of the case demonstrates that the musical composition, "12th Street Rag" achieved its fame not as a "song" but as an instrumental composition. Whatever popularity it retains to this day is no less based on its appeal as an instrumental number. That, indeed, was the purpose for which it was composed. The words Sumner wrote some years later at the request of the Jenkins Co., for use in conjunction with Bowman's melody, did little to enhance the established popularity of the music. The lyric was written in response to a request of some theatrical performers then appearing in Kansas City, which has a 12th Street. The lyric gave the music in their act some added local color.

The defendant did not dispute plaintiff's claim of the exclusive right to the renewal copyright of the instrumental music. Defendant was willing to concede plaintiff an interest in the song—a 50% interest—but defendant claimed for itself a 50% interest in the song and also claimed the right to publish the Bowman melody in conjunction with Sumner's words, on the ground that the song was a "joint work". The Court's decision herein has held that the song was a "composite work" and that defendant had no interest in the renewal copyright of the Bowman music, and accordingly the defendant's counterclaim was dismissed.

The Court ruled, in passing upon plaintiff's claim to the Sumner lyric as a work

---

2. "(c) Demand for Judgment. A judgment by default shall not be different in kind from or exceed in amount that prayed for in the demand for judgment. Except as to a party against whom a judgment is entered by default, every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings."

written "for hire" that Sumner wrote the words of the lyric as a special assignment for which he was paid a sum in addition to his regular salary by his employer, the Jenkins Co., and there are Findings of Fact and Conclusions of Law dealing with that issue. But plaintiff prevailed in its main contention that it owned the renewal copyright to the Bowman music. Defendant failed in its main contentions that the "song" was a joint work and that defendant had the right to publish the Bowman melody in conjunction with the Sumner lyric.

Plaintiff's attorneys devoted a substantial amount of their time and effort in an unsuccessful attempt to prove that Sumner wrote his lyric as an "employee for hire". Plaintiff took the precaution of tieing two strings to its bow. In determining the amount of a proper attorney's fee for plaintiff, the Court will take into consideration the fact that a considerable amount of plaintiff's attorneys' time was devoted to that factual issue, on which they were unsuccessful.

■ On the question of costs and an attorney's fee in a copyright action, the Court considers primarily who was the infringer. Plaintiff has not infringed the renewal copyright of the Sumner lyric, which is owned by the defendant as Sumner's assignee. But defendant did infringe the renewal copyright of the Bowman music, which is owned by plaintiff.

Defendant with knowledge of the copyright assignments from Bowman to plaintiff, and from Jenkins to plaintiff, set out to get an assignment of the Sumner lyric so as to be able to publish the "Song", "12th Street Rag" and to claim a 50% interest in the "song", consisting of the Bowman music and the Sumner lyric. If the "song" was a "composite work", the defendant had no right to publish the Bowman music with the Sumner lyric. The court held the song was a "composite work". Hence defendant by its assignment from Sumner obtained no right to publish the "song" and therefore defendant infringed the renewal copy-

right of the Bowman music, owned by plaintiff.

■ The defendant was in no respect a successful party. The plaintiff has never published the Sumner lyric with the Bowman music since the expiration of the original copyright period on the Sumner lyric in 1947. The plates for the "song" were acquired by plaintiff from the Jenkins Co. pursuant to an agreement dated June 11, 1942. At the time the Jenkins Co. was the owner of the original copyright of the Bowman music and the original copyright of the Sumner lyric, and the Jenkins Co. had been publishing the Bowman instrumental music separately and also with Sumner's lyric as a "song". The plates of the song, which the plaintiff acquired from Jenkins Co. have never been illegally used either by the Jenkins Co. or by the plaintiff. There is no reason for the condemnation of plates that have not been illegally used, where there is no showing that plaintiff is likely to use the plates illegally. Indeed any such use is formally disavowed by plaintiff. Then why does defendant seek a conclusion of law condemning the song plates now held by plaintiff and requiring their forfeiture and destruction? Solely to put defendant in a position of a "prevailing party" in the litigation, when the questions of costs and attorney's fees come before the Court. Defendant has lost this case in this Court. Plaintiff is the prevailing party. With knowledge of the consequences [defendant has been a litigant in several similar cases in this Court] some music publishers as part of their business, have at times sought to obtain an interest in popular musical compositions by acquiring the renewal rights to the lyric or to the melody thereof. And the decisions show that the loser in the subsequent copyright litigation generally has to pay the attorney fees of the successful party. Cases, such as this, show the need for that statutory provision. T. 17 U.S.C.A. § 116.

Defendant also argues that "it is not inconceivable that in the future there may be performances of the song '12th Street Rag' containing the Bowman

music and Sumner lyric, and questions will arise in Ascap as to the disposition of fees received for such performances" and for that reason plaintiff is entitled to a declaratory judgment that it is the sole and exclusive owner of the renewal copyright on the Sumner lyric. There are several answers to this. First the possibility is so remote that it need not be dealt with now. Further, if it does arise Ascap or the Courts will dispose of the question. And finally, if the broadcast is based on the use of copies of the "song" printed by defendant in violation of plaintiff's copyright, how could defendant claim any financial return causally connected with defendant's own illegal-conduct?

Defendant's motion is in all respects denied.

### Plaintiff's Cross-Motion.

 Plaintiff's cross-motion to amend Conclusions of Law V, VII and VIII is denied. The "title" of a musical composition is not protected by the copyright of the composition itself. In fact the title of a musical composition cannot be copyrighted. Arnstein v. Porter, 2 Cir., 154 F.2d 464, at page 474. Weissman v. Radio Corporation of America, D.C., 80 F.Supp. 612. The copyright of a song does not give the owner thereof the exclusive right to the use of the "title" of the song. Newcomb v. Young, D.C., 43 F.Supp. 744. The same principle applies to the title of a play, or novel, or motion picture. Warner Bros. Pictures, Inc., v. Majestic Pictures Corp., 2 Cir., 70 F.2d 310; Glaser v. St. Elmo Co., C.C., 175 F. 276; Harper v. Ranous, C.C., 67 F. 904 and Patten v. Superior Talking Pictures, Inc., D.C., 8 F.Supp. 196. But where the use of an earlier title of another person's composition constitutes unfair competition, the injured party has a remedy. Warner Bros. Pictures, Inc., v. Majestic Pictures Corp., supra.

The plaintiff's motion is accordingly denied.

In conclusion, I wish to note that this case has received my complete and careful consideration. The Findings of Fact,

Conclusions of Law and Opinion filed July 27th dealt with every important issue and question presented. I have disposed of these two present motions on the motion papers, without requesting any oral argument, because none was necessary. The next steps should be (a) the submission of orders denying these motions; (b) the submission of an appropriate interlocutory decree based on the Court's decision as set forth in the appriate Conclusions of Law. The amount of the attorney's fee can be held open until the reference in relation to damages is completed.