668 F.2d 91
 218 U.S.P.Q. 750, 1982 Copr.L.Dec. P 25,339
 FILMVIDEO RELEASING CORPORATION, Plaintiff-Appellant,
v.
David R. HASTINGS II, as Administrator with Will annexed of
the Estate of Clarence E. Mulford, Defendant-Appellee.
David R. Hastings II and Peter G. Hastings, Intervenors-Appellees.
 No. 1548, Docket 81-7236.
 United States Court of Appeals,
Second Circuit.
 Argued Aug. 10, 1981.
Decided Dec. 11, 1981.
 
 Jeffrey L. Squires, Washington, D.C., (Jaffe, Squires & Foote and Peter Jaszi, Washington, D.C., on the brief), for plaintiff-appellant.
 Herbert P. Jacoby, New York City (Burns, Jackson, Summit, Rovins & Spitzer and Donald S. Engel, New York City, on the brief), for defendant-appellee and intervenors-appellees.
 Before VAN GRAAFEILAND and KEARSE, Circuit Judges and MARKEY, C.C.P.A.*
 VAN GRAAFEILAND, Circuit Judge.
 
 
 1
 The principal question on this appeal is whether a licensed[1], derivative, copyrighted work and the underlying copyrighted matter which it incorporates both fall into the public domain where the underlying copyright has been renewed but the derivative copyright has not. We agree with the Ninth Circuit, Russell v. Price, 612 F.2d 1123, 1126-29 (9th Cir. 1979), cert. denied, 446 U.S. 952, 100 S.Ct. 2919, 64 L.Ed.2d 809 (1980), that the answer is "No".
 
 
 2
 This is an appeal from a judgment of the United States District Court for the Southern District of New York, (Werker, J.), enjoining appellant from using, selling, or licensing certain Hopalong Cassidy motion pictures anywhere in the United States, directing appellant to transfer all of its prints, tapes and cassettes to appellees, and referring the computation of infringement damages and counsel fees to a magistrate. Because the facts have been fully set forth in three opinions by Judge Werker, reported at 426 F.Supp. 690, 446 F.Supp. 725 aff'd without opinion, 594 F.2d 852, and 509 F.Supp. 60, they will not be detailed herein. Briefly, however, the dispute is between the administrator c.t.a. of the estate of Clarence Mulford and the trustees of several Mulford trusts, on the one hand, and the present holder of Hopalong Cassidy movie prints, on the other. The movies were made and copyrighted by Paramount Pictures, Inc. under a 1935 licensing agreement between Mulford, author of the Hopalong Cassidy books, and Prudential Studios Corporation. The copyrights in the books were renewed; the copyrights in the movies were not. Although all television, broadcasting, and radio rights were specifically reserved to Mulford in the 1935 agreement, appellant contended unsuccessfully below that it was entitled to make free and untrammeled use of the movie prints in all media. Judge Werker's rejection of this argument brings the matter to this Court.
 
 
 3
 Section 6 of the 1909 Copyright Act, formerly codified at 17 U.S.C. § 7, provided in substance that derivative works produced with the consent of the underlying copyright owner should be regarded as new works subject to copyright, "but the publication of any such new works shall not affect the force or validity of any subsisting copyright upon the matter employed or any part thereof, or be construed to imply an exclusive right to such use of the original works, or to secure or extend copyright in such original works." Since 1909, the courts of this Circuit have held almost without exception that a derivative copyright is a good copyright only with regard to the original embellishments and additions it has made in the underlying work. See, e.g., London v. Biograph Co., 231 F. 696, 698-99 (2d Cir. 1916); American Code Co. v. Bensinger, 282 F. 829, 834 (2d Cir. 1922); G. Ricordi & Co. v. Paramount Pictures, Inc., 189 F.2d 469, 471 (2d Cir.), cert. denied, 342 U.S. 849, 72 S.Ct. 77, 96 L.Ed. 641 (1951); Reyher v. Children's Television Workshop, 533 F.2d 87, 89-90 (2d Cir. 1976); Gilliam v. American Broadcasting Companies, Inc., 538 F.2d 14, 20 (2d Cir. 1976); Eichel v. Marcin, 241 F. 404, 411 (S.D.N.Y.1913); Stodart v. Mutual Film Corp., 249 F. 507, 510 (S.D.N.Y.1917), aff'd per curiam, 249 F. 513 (2d Cir. 1918); Grove Press, Inc. v. Greenleaf Publishing Co., 247 F.Supp. 518, 526 (E.D.N.Y.1965).
 
 
 4
 Judge Lumbard summarized this well-established rule as follows:
 
 
 5
 However, section 7 limits the copyright protection of the derivative work, as works adapted from previously existing scripts have become known, to the novel additions made to the underlying work, and the derivative work does not affect the "force or validity" of the copyright in the matter from which it is derived.
 
 
 6
 Gilliam v. American Broadcasting Companies, Inc., supra, 538 F.2d at 20 (citations omitted.).
 
 
 7
 Since the proprietor of a derivative copyright cannot convey away that which he does not own, Id. at 21; Roy Export Co. v. Columbia Broadcasting System, Inc., 503 F.Supp. 1137, 1153 (S.D.N.Y.1980), it follows that he cannot release that which he does not own into the public domain. G. Ricordi & Co. v. Paramount Pictures, Inc., supra, 189 F.2d at 472; Grove Press, Inc. v. Greenleaf Publishing Co., supra, 247 F.Supp. at 526-27.
 
 
 8
 To the extent that Rohauer v. Killiam Shows, Inc., 551 F.2d 484 (2d Cir.), cert. denied, 431 U.S. 949, 97 S.Ct. 2666, 53 L.Ed.2d 266 (1977) may have departed from the doctrine established in the above cited cases, the aberration was a minor one, and it is not dispositive of the issues in the instant case. The precise holding in Rohauer was that a derivative copyright proprietor who had been promised a reconveyance of his license rights upon renewal of the underlying copyright, could enforce that promise as against the statutory successors of the deceased proprietor of the underlying copyright. The successors did not lose the protection inherent in the underlying copyright except to the limited extent that a right of derivative use had been granted the licensee. The licensee received no more than the right of use covered by the terms of the licensing agreement. His derivative copyright was not expanded to encompass that which was borrowed from the underlying work; he could not reproduce the borrowed material in other forms or versions as if it were his own original contribution. In short, he had no proprietary interest in the underlying copyrighted material which would enter the public domain upon the lapse of his own copyright.[2]
 
 
 9
 Indeed, as Judge Friendly noted in Rohauer, 551 F.2d at 489, a purpose of Congress in enacting the above quoted portion of section 7 was to ensure that a failure of the derivative copyright would not diminish the statutory protection afforded the underlying copyright. Appellant Filmvideo, which had no rights under the 1935 licensing agreement, could not dispute appellees' claim to protection under the Mulford copyright.
 
 
 10
 We therefore affirm those portions of the district court's judgment which (1) enjoin the infringing use by the appellant and (2) direct the computation of damages. However, we reverse that portion of the judgment which directs appellant to deliver to appellees all negatives, prints, etc. in appellant's possession. As the district court implicitly recognized in the terms of its injunction, copyright laws do not have extraterritorial application. Robert Stigwood Group Ltd. v. O'Reilly, 530 F.2d 1096, 1101 (2d Cir.), cert. denied, 429 U.S. 848, 97 S.Ct. 135, 50 L.Ed.2d 121 (1976). Appellant claims the right to show the Hopalong Cassidy films abroad, and the district court's injunction does not prevent it from so doing. In the absence of proof that appellant did not have legal possession of the films for his limited purpose, it was an abuse of discretion for the district court to direct that the films be turned over to appellees.[3]
 
 
 11
 The judgment of the district court is affirmed, except as to that portion which directs delivery of films, prints, etc. to appellees. The portion of the judgment which directs such delivery is reversed. Costs to appellees.
 
 
 
 *
 Hon. Howard T. Markey, Chief Judge of the United States Court of Customs and Patent Appeals, sitting by designation
 
 
 [1]
 The general rule under the 1909 Act was that a copyright was indivisible and could not be split up by assigning away separate tights out of the whole Hirshon v. United Artists Corp., 243 F.2d 640, 643 (D.C.Cir.1957); Key Maps, Inc. v. Pruitt, 470 F.Supp. 33, 38-39 (S.D.Tex.1978); First Financial Marketing Services Group, Inc. v. Field Promotions, Inc., 286 F.Supp. 295, 298 (S.D.N.Y.1968); 3 Nimmer on Copyrights § 10.01 (1980); Caterini, Contributions to Periodicals, 10 ASCAP Copyright Law Symposium 321, 330 (1959). Although, In Goodis v. United Artists Television, Inc. 425 F.2d 397, 399-403 (2d Cir. 1970), this Court indicated a willingness to recognize for some purposes the possibility of a "partial assignment", in this opinion we will use the term "license" instead of "partial assignment"
 
 
 [2]
 Judge Friendly's discussion of a so-called "property right" in the proprietor of the derivative copyright was directed to the factual picture that was before him. Congress has incorporated in the 1976 Act the traditional rule that the "copyright in a compilation or derivative work extends only to the material contributed by the author of such work, as distinguished from the preexisting material employed in the work, and does not imply any exclusive right in the preexisting material." 17 U.S.C. § 103(b). In view of this, it would be anomalous to reject that traditional rule in cases such as the instant one, where the facts, and their social and equitable implications, differ so widely from those of Rohauer
 
 
 [3]
 Our holding deals only with the district court's exercise of authority under 17 U.S.C. § 503(b). We do not determine whether appellant has a prior right of possession as against others claiming ownership or possessory interests