HIAWATHA CARD COMPANY, a co-partnership consisting of Donald J. Gridley and Lucy J. Gridley, Plaintiff,

v.

COLOURPICTURE PUBLISHERS, INC., a Massachusetts Corporation, Defendant.

COLOURPICTURE PUBLISHERS, INC.,

v.

Donald J. GRIDLEY and Lucy J. Gridley, doing business as Hiawatha Card Company.

Civ. A. Nos. 23871, 25246.

United States District Court
E. D. Michigan, S. D.

Jan. 12, 1966.

Edward M. Apple, Detroit, Mich., Barnard, McGlynn & Reising, Birmingham, Mich., for Donald J. and Lucy J. Gridley.

McCabe, Middleton & Kennedy, Detroit, Mich., Kaye & Fialkow, Boston, Mass., of counsel, for Colourpicture Publishers, Inc.

## FINDINGS OF FACT

THORNTON, District Judge.

The Hiawatha Card Company is a co-partnership consisting of Donald J. Grid-

ley and Lucy J. Gridley, citizens of the State of Michigan. The defendant, Colourpicture Publishers, Inc., is a Massachusetts corporation engaged in the business of making reproductions of original photographs, color transparencies, color slides, etc., for customers in different parts of the country, including the plaintiffs.

The plaintiffs also use the Trade name "Hiawatha" and have used this name since 1950. When Hiawatha entered the business of creating original art work and color transparencies that would be reproduced in color, then sold by Hiawatha to outlets in the State of Michigan, the plaintiffs owned a quantity of cameras and photographic equipment and also owned an airplane, with Mrs. Gridley being the photographer and her husband, Donald Gridley, operating the airplane as a licensed pilot.

Hiawatha has done business with Colourpicture since April of 1950, and for a great many years was completely satisfied with the work done for it by Colourpicture. Late in 1951, Hiawatha, after learning of a notation of a copyright on some postcards that were located in northern Michigan, asked Colourpicture if Hiawatha could have copyright notices on the cards that were produced by Colourpicture for Hiawatha. Mr. Tichnor of Colourpicture said that such a notice would not accomplish anything; that there was very little to be gained; that the copyrights would cost Hiawatha money, and the cost of the copyright production would be more than it was worth. The Hiawatha company relied upon this advice for an extended period of time. Again in April of 1958, as per Exhibit 5, Colourpicture advised Hiawatha not to copyright their photographs. From the time that Hiawatha first did business with Colourpicture until February of 1952, the purchase orders that were used by Hiawatha in ordering from Colourpicture contained in part the following: "All lithographic and printing plates, transfers, negatives, etc., remain the property of Colourpicture Publishers, Inc.", and this wording continued in use

by Colourpicture until February of 1952, when the said wording was changed to read as follows: "All photographs, lithographic and printing plates, negatives, etc., including all rights of reproduction become and remain the property of the seller to its own use". However, this change was made only in the purchase orders and was not made in the acknowledgment of orders by Colourpicture until 1958.

Colourpicture did not notify Hiawatha of this change in the purchase orders. Hiawatha discovered a change in the color of the paper used for purchase orders and this aroused curiosity in Hiawatha to the extent that the change was noticed. Early in May of 1952 Hiawatha discussed this change in the purchase orders with Mr. Lawrence Tichnor of Colourpicture, one of the officers of that company, who advised Hiawatha that the change in wording was no problem; that it was put in there to protect Colourpicture against bad debts and people going into bankruptcy leaving Colourpicture "holding the bag"; and it was alright for Hiawatha to use the old purchase orders. Pursuant to that advice, Hiawatha continued to use the old forms containing the old wording through the balance of 1952 and through 1953. On the basis of the explanation of the change of wording by Mr. Tichnor of Colourpicture, and relying on the said information as being authentic and official, Hiawatha considered that the provision "including all rights of reproduction become and remain the property of the seller to its own use" as contained in the said change of wording had absolutely no application to the business relationship between Hiawatha and Colourpicture.

From 1950 to February 1963, Colourpicture returned all color transparencies to Hiawatha that had been sent in for printing by Hiawatha. In February 1963, Colourpicture first asserted ownership of the color transparencies, and as to Colourpicture's claim of ownership of the copyrights on the copyrighted material owned by Hiawatha, Colourpicture first asserted a claim of beneficial in-

terest in the copyrighted material of Hiawatha in its answer to the Complaint in this case.

In August of 1958, Hiawatha entered into a written agreement with Colourpicture establishing Hiawatha as an exclusive distributor for Colourpicture in an identified area. The said agreement was prepared by Colourpicture and presented to Hiawatha. It was signed by Hiawatha in Michigan and a copy returned to Hiawatha after being signed by Colourpicture in Massachusetts. The said agreement had the termination date of said contract xxx'd out. Accompanying the said copy of the agreement was a certificate issued by Colourpicture to Hiawatha that identified Hiawatha as a distributor of Colourpicture covering a period from 1958 to 1959. Since the termination date was left out of the agreement but was set out in the certificate, Hiawatha considered the distributorship to be in effect for one year.

This aforesaid written agreement made no reference to the ownership of color transparencies or to any right of reproduction vesting the ownership in Colourpicture. Hiawatha never knowingly transferred their right of ownership in color transparencies to Colourpicture, and never knowingly transferred and/or assigned their rights in their copyrighted material to Colourpicture during the entire period of doing business with Colourpicture. The Hiawatha company sold part of its business to Mr. and Mrs. Gunn of Ypsilanti, Michigan, in 1959 for $53,-000, and included in the sale were 300 color transparencies. After the agreement between the Gunns and the Gridleys in relation to this transaction, Mr. Swinton, as a representative of Colourpicture, met with the Gunns in the presence of the Gridleys. The Gunns, as the Hiawatha Card Company of Detroit, signed an exclusive distributorship agreement with Colourpicture. In a discussion at the time of the signing of the said agreement by the Gunns, Mrs. Gunn stated and understood that the color transparencies forwarded to Colourpicture by her company would be returned to Hiawatha Card Company of Detroit.

In May of 1963, Mr. Harrison, as a representative of Colourpicture, was in the home of Mr. and Mrs. Gunn of Ypsilanti, Michigan, discussing the business of Colourpicture with the Gunns, when Mr. Harrison was served with process in this case.

A second exclusive distributorship agreement was presented to Hiawatha, and the Gridleys refused to sign the said second agreement because they had sold part of their business to the Gunns, which split up the territory. The Gridleys were being discriminated against, price-wise, by Colourpicture. However, the Hiawatha company continued to send orders after it refused to sign the agreement, and this practice continued until 1963.

In 1963 Hiawatha communicated with Colourpicture regarding transparencies that were owned by Hiawatha and in the possession of Colourpicture as the result of the business relationship between the parties. This was the first occasion when Hiawatha learned that Colourpicture was claiming ownership of Hiawatha's transparencies.

Colourpicture, in January of 1958, did not comply with said instructions from Hiawatha in relation to Hiawatha's copyright notice on the postcards in a proper manner. As a result of this failure on the part of Colourpicture to properly publish the copyright notice and name of Hiawatha, the said postcards fell into the public domain, with the result that other people used Hiawatha's copyrighted pictures. No amount can be arrived at by Hiawatha as the result of the loss brought about by the failure of Colourpicture to follow the instructions of Hiawatha in relation to copyright notice. As of now, Colourpicture has in its possession 104 color transparencies that are the property of Hiawatha. They also were requested to return these transparencies to Hiawatha. Colourpicture has refused to comply with this request. At least as to some of these transparencies, the loss to Hiawatha cannot be ascertained by Hiawatha, since some of the

photographs relate to the Mackinac Bridge and the Soo Locks while each was under construction. There is no way that Hiawatha can duplicate these photographs.

Hiawatha gave Colourpicture a license to reproduce transparencies for Hiawatha, but not for any other customers or sources.

Hiawatha never entered into any sort of an arrangement with Colourpicture to hold in trust their copyright for Colourpicture.

As a result of an investigation by Hiawatha, and after notice of infringement was given to Colourpicture, a total of 803,855 infringing postcards were published by Colourpicture and disposed of by Colourpicture in the area covered by the investigation by Hiawatha. Colourpicture, in its answers to interrogatories, admits publishing approximately 462,000 photographs after receiving notice of suit.

Mrs. Helen Mikos operated a novelty shop in Cheboygan, Michigan, and as part of the business she bought and sold postcards and was a customer of Hiawatha for the purpose of handling this type of merchandise, having done business with Hiawatha for 8 years. She was contacted by a salesman from Colourpicture named Edward Harrison, in March of 1963. He represented that he had the line of Hiawatha cards and gave the impression that he was working for Hiawatha and the Gridleys, and that Hiawatha had decided to handle the postcards in a different way; that he carried the entire line; and inquired if Mrs. Mikos would not prefer to do business with the Cheboygan Candy Company, rather than continue with the Gridleys in Hiawatha. During the course of this contact with Harrison, Mrs. Mikos became suspicious and made her suspicions known to Harrison, who finally admitted he was working for Colourpicture Publishers, Inc., and that Colourpicture could give her better service; and that he was in a position to supply the complete Hiawatha line or anything else that Mrs. Mikos had previously been buying from Hiawatha.

The Cheboygan Candy Company of Cheboygan, Michigan, had many of Hiawatha's copyrighted pictures in its possession, with the Hiawatha name removed from the said postcards.

After Hiawatha learned through its investigation of the infringing practices of Colourpicture in relation to Hiawatha's copyrighted material, Hiawatha notified its customers, both by letter and by personal contact, of the conduct of Colourpicture in relation to infringing Hiawatha's copyrights. In some instances Hiawatha was told by these customers that they intended keeping right on selling the infringing postcards, because they were told by Colourpicture's representatives that Hiawatha was in the wrong and Colourpicture was in the right.

Hiawatha sent a notice of infringement to Colourpicture on February 25, 1963 (Exhibit #16) in a communication which Mrs. Gridley considered to be a notice of infringement. She further understood that her legal counsel in Boston had telephoned Mr. Tichnor and given him notice of infringing practices.

Since Colourpicture printed the postcards containing the copyrighted photographs involved in this infringement action, Colourpicture by publishing postcards with the copyright notice of Hiawatha imprinted thereon had actual notice of copyright ownership in Hiawatha.

## CONCLUSIONS OF LAW

The Court has jurisdiction of the subject matter of this action and of the parties to the said action.

■ The defendant, Colourpicture, had notice of Hiawatha's copyrights, inasmuch as Colourpicture published each of the original copies with notice of copyright in Hiawatha imprinted thereon.

The copyrights owned by Hiawatha and involved in this litigation are valid.

Under date of February 25, 1963, Hiawatha, in a letter to Colourpicture, gave notice to Colourpicture that it was infringing Hiawatha's copyrights; the

service of summons in the instant case upon Colourpicture provided Colourpicture with notice of infringement.

Colourpicture has infringed 83 copyrights owned by Hiawatha.

Colourpicture is in possession of 104 original transparencies and photographs which are the property of Hiawatha.

Plaintiff has always been and still is the owner of the copyrighted photographs involved in this litigation, and as such owner has always retained the right to reproduce the subject matter of the said copyrights, with the additional right to grant a license or licenses under the said copyrights.

There is no proof of any contract wherein Hiawatha transferred or assigned in any way the ownership of its copyrighted rights of reproduction and/or vending of color transparencies and reprints of the same to Colourpicture. Hiawatha was specifically exempted from the application of the amended provision of the purchase order which states: "including all rights of reproduction become and remain the property of the seller to its own use." Under these facts, there is no mutuality of agreement, no mutuality of obligation and, therefore, no contract.

The right in Colourpicture to reproduce the copyrighted material of Hiawatha, upon the order of Hiawatha, was a license given by Hiawatha to Colourpicture for that express purpose, and did not constitute a transfer of legal title by Hiawatha of its copyrighted right of reproduction.

"If the assignors did not assign all of their rights * * *, we can imply no assignment of the copyright, for the copyright proprietor 'may transfer the legal title to his copyright only in totality; the copyright may not be split up and partially assigned as to the various rights encompassed therein.' Finkelstein, The Copyright Law— A Reappraisal, 104 U.Pa.L.Rev. 1025, 1060 (1956)." [Hirshon v. United Artists Corporation, 100 U.S.App.D.C. 217, 243 F.2d 640]

The arrangement between Colourpicture and Hiawatha, in relation to the exclusive distributorship, left blank the date of termination of this arrangement, and such material term was not supplied by any other part of the said arrangement, so the writing was incomplete as an agreement, and Hiawatha had the right to rely upon the dates in the Certificate (Exhibit #10) as the termination date of the arrangement.

It would be difficult to ascertain damages to the plaintiff and profits to the defendant, with the possibility that neither could be accurately arrived at, so the Court awards damages in the total amount of $20,750.00.

Damages are not assessed as a penalty. An injunction will issue restraining Colourpicture from infringing Hiawatha's copyrights and infringing plaintiff's trademark and trade name, "Hiawatha".

An order may be entered requiring Colourpicture to return the transparencies and photographs it now has in its possession that are the property of Hiawatha.

The plaintiff is allowed costs to be assessed and a reasonable attorney fee.

The claim by Colourpicture in its counter-claim filed herein that Colourpicture has a beneficial interest in the copyrights heretofore issued to Hiawatha, and that Hiawatha is holding the certificates of registration of these copyrights and the said copyrights in trust for Colourpicture is without merit, as reflected in the foregoing findings and conclusions; the relief demanded by Colourpicture in its counter-claim on its allegation that Hiawatha made false and libelous statements tending to injure Colourpicture's reputation and good will, is denied for the reason that the alleged libelous writings were without malice and were used by Hiawatha for the purpose of advising its customers and the general trade of Colourpicture's infringing practices.

All other relief demanded in Colourpicture's counter-claim is denied for want

of any substantial evidence that would warrant the Court in granting the said relief.

A judgment may be presented in accordance with these findings and conclusions.