**NEW YORK TRIBUNE, Inc., v. OTIS & CO.**

District Court, S. D. New York.
Feb. 11, 1941.

Sackett, Chapman, Brown & Cross, of New York City (E. Douglas Hamilton, of New York City, of counsel), for plaintiff.

O'Connor & Farber, of New York City (Robert J. Bulkley, of Cleveland, Ohio, and Arnold T. Koch, of New York City, of counsel), for defendant.

HULBERT, District Judge.

The defendant has moved to dismiss the complaint pursuant to Rule 12(b) and for summary judgment under Rule 56(b) of the Federal Rules of Civil Procedure, 28 U.S. C.A. following section 723c.

The action is for infringement of copyright and, incidental thereto, the plaintiff also alleges violation of a trade-mark.

The gravamen of the complaint is the unauthorized reproduction by the defendant of the title, editorial page masthead and leading editorial published in plaintiff's copyrighted newspaper "The New York Herald Tribune", of Saturday, September 7, 1940. The editorial in question dealt with an alleged vigorous blast against the Republican candidate in the recent Presidential election as "the new wolf of Wall Street".

Anticipating a further charge:

"We shall be told that Mr. Willkie takes his orders from Wall Street, has his office in Wall Street, looks to Wall Street as the gathering place of the nation's brains and plans to place a direct pipe line from Wall Street to the White House if he is elected.

"The truth is, of course, that Mr. Willkie has never had any connection with Wall Street; that he has never had an office in Wall Street; that he has never fraternized with the Wall Street community; that he has never shown either admiration or respect for its wishes and that he is the most completely and genuinely free and untrammeled candidate that has headed any ticket in many years. In fact, it was his very independence that won him the nomination, just as it has made some of the more conservative leaders in Wall Street who hailed his nomination doubtful about whether or not he was the sort of man they would like to see in the White House. It is a measure of the uneasiness of the Democrats about victory that they are now

**68**

trying to pretend that the most liberal, independent Republican candidate for the Presidency in years is tied up with the 'moneyed interests' ".

The defendant is engaged in the Investment Banking business, having its principal office in Cleveland, Ohio, and branch offices in New York, N. Y., and other cities.

Following the publication of the editorial, a Mr. Eaton, claiming to be associated with the defendant, addressed a communication to the plaintiff containing the inquiry: "What, in the Herald Tribune's estimation, is wrong with Wall Street that it is imperative for a presidential candidate not only to disavow any relations, past, present or future, with the New York financial community, but also to convince the electorate 'that he has never shown either admiration or respect for its wishes'? Why does a great newspaper in New York City, so much of which is built around Wall Street, find the mere suggestion of a Presidential candidate's relation to the financial district utterly repugnant?"

The plaintiff acknowledged the receipt of this letter but never made any reference to it in the columns of its newspaper. Thereupon the defendant addressed a circular letter, allegedly to a "selected list of public officials, bankers, educators, economists and other persons" enclosing a photostatic copy of an editorial and masthead.

■ With respect to defendant's motion to dismiss, I am of the opinion that the complaint states a good cause of action on its face. Sections 3 and 5 of the Copyright Act of March 4, 1909, 17 U.S.C.A. §§ 3, 5; Exhibit "C" annexed to the complaint evidencing compliance with said Act. See King Features Syndicate v. Fleischer, 2 Cir., 299 F. 533, 535.

The motion for summary judgment must be denied.

■ The defendant contends that its use of plaintiff's editorial did not amount to an infringement of the copyright but comes within the legally recognized area of invasion of plaintiff's rights as a "fair use" of the editorial. If and when "fair use" constitutes a defense is to be determined by consideration of all the evidence in the case. Simms v. Stanton, C.C., 75 F. 6, 10; Folsom v. Marsh, 9 Fed.Cas. pages 342, 348, No. 4,901.

The extent and relative value of the copyrighted material, the purpose for the claimed "fair use", and the effect upon distribution and objects of the original work are some elements entering into the determination of the issue. Broadway Music Corp. v. F-R Pub. Corp., D.C., 31 Fed.Supp. 817.

■ Plaintiff contends that the defendant was not actuated by its professed motives but sought publicity for commercial reasons. While intent to infringe is not essential to plaintiff's cause of action, (Buck v. Jewell-LaSalle Realty Co., 283 U.S. 191, 198, 51 S.Ct. 410, 75 L.Ed. 971), nevertheless the defendant's intention bears upon the question of "fair use." Lawrence v. Dana et al., 15 Fed.Cas. 26, at page 51, No. 8,136.

Plaintiff also asserts that it should be given an opportunity to discover the exact number of reproduced and distributed copies as bearing on defendant's claimed "fair use" of the editorial.

■ On the whole, I am persuaded that the determination of the "fair use" should not be resolved on affidavits but is best left to the trial judge. Settle order on notice.