**KEY MAPS, INC., Plaintiff,**

**v.**

**J. J. PRUITT, Individually and in his official capacity as Fire Marshal of Harris County, and Harris County, Defendants.**

**Civ. A. No. 75–H–2086.**

United States District Court,
S. D. Texas,
Houston Division.

Nov. 14, 1978.

Jerry Sadler, Alfred C. Schlosser & Co., Houston, Tex., for plaintiff.

Joe Resweber, County Atty., Harris County, Anthony D. Sheppard, Asst. County Atty., Houston, Tex., for defendants.

## MEMORANDUM OPINION

SEALS, District Judge.

### STATEMENT OF THE CASE

Plaintiff, Key Maps, Inc., is a corporation incorporated under the laws of the State of Texas having its principal place of business in Houston, Harris County, Texas. Mr. James Rau has been the President of Key Maps since its inception in 1957.

Defendant, Jesse James Pruitt, has been Fire Marshal of Harris County since he took office on January 1, 1974. The Fire Marshal is responsible for coordinating the fire prevention activities of volunteer fire departments in unincorporated areas of Harris County. In order to execute his responsibilities, it was necessary for Mr. Pruitt to know the areas of responsibility for each fire department.

Insofar as the issues in this case are concerned, the relationship of the parties began when Defendant Pruitt needed a small map in order that each fire department would know where its boundaries began and ended. Harris County is also named a Defendant in this case.

From 1957 to the present the Plaintiff, Key Maps, through its map-making process, developed a map of Houston, Harris County, Texas known as the "Major Thoroughfare Map". This map has been duly copyrighted pursuant to the laws of the United States.

The Defendant, Harris County, had been a customer of Key Maps for many years and purchased various quantities of maps. Mr. Rau estimated that Harris County provided approximately $18,000.00 worth of business per year. Also, Mr. Rau and Defendant Pruitt casually met in 1966 when Pruitt was a fireman and Rau would come to the fire department headquarters to verify various streets for his maps.

In February, 1974, Defendant Pruitt in his official capacity went to Key Maps and spoke to Mr. Rau for the purpose of having prepared an official fire zone map. The maps were needed to identify the various fire zones for fire protection purposes. The fire zone maps were to be used only for official business of the Fire Marshal's protection program in the unincorporated areas of Harris County. The maps were never intended for public dissemination.

Subsequently, Mr. Pruitt and Mr. Rau, on behalf of Plaintiff Key Maps, orally agreed to the reproduction of "The Official Fire Zone Map of Harris County" for the Fire Marshal. To accomplish this end, Rau indicated to Pruitt that it would be more economical for the County to purchase the copyrighted "Major Thoroughfare Map" use it as a base, have the County Engineer's Office draw the County Fire Zones thereon, and then pay Key Maps to print the composite Fire Zone Map.

On April 30, 1974 and on May 7, 1974, respectively, Defendant Pruitt purchased three maps and requested the County Engineer's Office to take one of the maps and draw the various fire zones on it. The County Engineer's Office gave Pruitt the Fire Zone Map which was a composite of Plaintiff's "Thoroughfare Map" and the fire zone boundaries drawn by the County Engineer's Office.

On June 17, 1974, Defendant Pruitt took the Fire Zone Map and a purchase order issued by the County to the Plaintiff with the understanding that Key Maps would reproduce two hundred copies of the Fire Zone Map at a size of 17 x 22 and a total cost of $325.00.

The Court finds that Defendant Pruitt told Mr. Rau that he had to have the order within ten days because there was a great need for the Fire Zone Maps in the various fire departments. The Court further finds that Mr. Rau indicated that he was very busy but that he would have the order completed in about ten days.

Key Maps delayed completion of the maps despite Defendant Pruitt's telephoning Rau and asking him to expedite the reproduction as originally agreed. After the passing of six weeks (June 17–July 29, 1974), several telephone calls, and no indication when the maps would be completed, Mr. Pruitt notified Key Maps on July 29, 1974, by a hand delivered letter, that its order was cancelled due to an inexcusable delay.

Pruitt left the letter of cancellation with a person at the front desk of Mr. Rau's office and requested return of the Fire Zone Map previously left there to be reproduced on June 17, 1974. Although Pruitt did not see Rau during his last visit to Key Maps he did receive return of the composite Fire Zone Map.

Plaintiff, Key Maps, did not reproduce the map as originally agreed between the parties. Therefore when Defendant Pruitt retrieved the Fire Zone Map from Key Maps he received another purchase order from the County for Postal Printing Service to make the overlays and reproduce the map. Although this particular purchase order was not available at trial, Pruitt testified on direct examination that he had three hundred copies reproduced because it was cheaper than reproducing two hundred copies. Less than one hundred of these maps were actually distributed to the approximately fifty Fire Departments, Law Enforcement Agencies and Civil Defense Units in Harris County.

Mr. Rau testified that it was possible under the totality of the circumstances for Mr. Pruitt reasonably to believe that Pruitt had a right to make the copies. Mr. Rau also testified that he felt like he did warn or would have warned Pruitt not to reproduce any of his maps without a license because it was standard procedure to do so in a discussion of this nature.

Eventually the maps proved to be of little or no value to the Defendants because they were too small for the purpose which he originally had them drafted. The County finally had the map redone on a superior scale and without the use of the Plaintiff's composite Fire Zone Map. In January, 1975, Key Maps notified Mr. Pruitt that it had learned that the Fire Zone Map had been reproduced and warned that use of the map should be discontinued or that the Plaintiff would file suit.

On January 21, 1975, January 30, 1975, February 6, 1975, March 14, 1975, May 6, 1975, June 2, 1975, June 6, 1975, and June 13, 1975, Plaintiff's attorney wrote various letters to Defendant Pruitt and other County officials complaining of the alleged breach of copyright in accordance with Article 1573 of the Texas Revised Civil Statutes.[1] The letters of June 6, 1975, and June 13, 1975, were directed to the Harris County Commissioners Court and demanded $20,-000.00 for the alleged copyright infringement.

---

1. Tex.Rev.Civ.Stat.Ann. art. 1573 (Vernon) states: "No county shall be sued unless the claim upon which such suit is founded shall have first been presented to the commissioners court for allowance, and such court shall have neglected or refused to audit and allow the same, or any part thereof."

On June 20, 1975, the Clerk of the Commissioners Court wrote a certified letter to Plaintiff's attorney in connection with the $20,000.00 claim. The letter indicated that the matter was under advisement and that the Plaintiff should "forthwith" submit any further written evidence or other oral testimony, if it so desired. The Court Clerk did not hear from the Plaintiff and on June 26, 1975, the Commissioners Court rendered a take-nothing judgment against Plaintiff, Key Maps.

## STATEMENT OF THE CASE

The Plaintiff contends that the act of the Defendant, Mr. Pruitt, in causing the Fire Zone Map to be reproduced and distributed, violated the copyright of Key Maps and constituted an infringement for which Key Maps is entitled to recover monetary damages and injunctive relief.

█ Maps are arguably entitled to limited copyright protection since the source materials for maps is often in the public domain. *See, County of Ventura v. O. V. Blackburn,* 362 F.2d 515 (9th Cir. 1966). Cases presenting the question of whether a specific use made of a map, claimed to be entitled to copyright protection, is "fair" or constitutes an infringement is particularly adaptable to the concept of "fair use." The doctrine of "fair use" concerns the nature and extent of uses which a person, other than the copyright owner, may "fairly" or properly make of copyrighted works without the express consent of the owner.

17 U.S.C. § 107 states:

Notwithstanding the provisions of section 106, the fair use of a copyrighted work, including such use by reproduction in copies or phonorecords or by any other means specified by that section, for purposes such as criticism, comment, news reporting, teaching (including multiple copies for classroom use), scholarship, or research, is not an infringement of copyright. In determining whether the use made of a work in any particular case is a fair use the factors to be considered shall include—

(1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;

(2) the nature of the copyrighted work;

(3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and

(4) the effect of the use upon the potential market for or value of the copyrighted work.

Pub.L. 94–553, Title I, § 101, Oct. 19, 1976, 90 Stat. 2546.

█ Congress, by giving express statutory recognition to the judicial doctrine of "fair use," obviously intended to limit the exclusive right of a copyright owner where circumstances require it. The Judiciary Committee report indicated:

Although the courts have considered and ruled upon the fair use doctrine over and over again, no real definition of the concept has ever emerged. Indeed, since the doctrine is an equitable rule of reason, no generally applicable definition is possible, and each case raising the question must be decided on its own facts.

. . . Beyond a very broad statutory explanation of what fair use is and some of the criteria applicable to it, the courts must be free to adapt the doctrine to particular situations on a case-by-case basis.

Notes of Committee on Judiciary, House Report No. 94–1476. General Background of the Problem.

█ In the case at bar, the Court is of the opinion that Defendant Pruitt's use of the composite Fire Zone Map is a "fair use" within the meaning of 17 U.S.C. § 107. The purpose and character of the use of the copyrighted material, the nature of the copyrighted work, and amount and substantiality of the work used, and its effect upon the potential market for the copyrighted material are factors which must be evaluated in concert. *Williams & Wilkins Co. v. United States,,* 487 F.2d 1345, 1353, 203 Ct.Cl. 74 (1973), aff'd by an equally divided court, 420 U.S. 376, 95 S.Ct. 1344, 43 L.Ed.2d 264 (1975) (per curiam).

■■ The doctrine of "fair use" applies to the conduct of the Defendants because the use of the composite Fire Zone Map was for a legitimate, fair, and reasonable purpose, namely the coordination of fire prevention activities in the unincorporated areas of Harris County. *Tennessee Fabricating Co. v. Moultrie Mfg. Co.*, 421 F.2d 279, 284 (5th Cir. 1970). Also Pruitt's use of the maps was not of a commercial nature because the distribution was not in competition with the Plaintiff but solely for internal purposes which related to a discernable public interest. *Rosemont Enterprises, Inc. v. Random House, Inc.*, 366 F.2d 303, 307–309, *cert. denied*, 385 U.S. 1009, 87 S.Ct. 714, 17 L.Ed.2d 546 (1967).

■ After balancing the exclusive rights of the copyright holder, Key Maps, with the public's interest in disseminating the maps to the various fire departments for fire prevention purposes, the Court opines that a privilege is created in the Defendants to use the copyrighted maps in a reasonable manner without the express consent of the Plaintiff. *Wainwright Securities, Inc. v. Wall Street Transcript Corp.*, 558 F.2d 91 (2d Cir. 1977).

The fact that Pruitt had the composite Fire Zone Map reproduced by someone other than Key Maps, as a result of their unreasonable delay, does not diminish or prejudice the potential sale of Plaintiff's maps. Here again, the Court is of the opinion that Pruitt's use of the maps is insubstantial and entitled to the "fair use" defense because the maps were restricted to use by the approximately fifty Fire Departments, Law Enforcement Agencies and Civil Defense Units in Harris County for the purpose of showing the zones of each Fire Department. *Meeropol v. Nizer*, 560 F.2d 1061, 1070 (2d Cir. 1977).

■■ The Court finds that the Defendants did not believe that they were at liberty to use the copyrighted maps of the Plaintiff in their own discretion. Although intent to infringe is not essential to Key Maps' cause of action for infringement of copyright, Pruitt's intention was material upon the question of "fair use." *New York Tribune v. Otis & Co.*, 39 F.Supp. 67 (D.C.N.Y.1941).

■ "Fair use" presupposes good faith and fair dealing. Here Defendants J. J. Pruitt and Harris County dealt fairly with Key Maps and in good faith. When Plaintiff unreasonably delayed in reproducing the maps, Pruitt cancelled their order and received another purchase order from the County for Postal Printing Service to reproduce the map. The latter company reproduced one hundred more copies than originally ordered because of a cheaper price. The Court further finds that Defendants did not derive any benefit from the fire zone map since it later proved to be too small for the purpose originally drafted. (Defendant Pruitt's testimony—unchallenged by the Plaintiff's evidence.). The County ultimately had the map redone on a superior scale and without the use of Plaintiff's composite Fire Zone Map. *Time Inc. v. Bernard Geis Assoc.*, 293 F.Supp. 130, 146 (S.D.N.Y.1968).

Combining these elements together, the Court concludes that Plaintiff has failed to show that the Defendants' use of the copyrighted maps has been "unfair," and conversely the Court finds that this practice was "fair." See *Fortnightly Corp. v. United Artists Television Inc.*, 392 U.S. 390, 393–395, 88 S.Ct. 2084, 20 L.Ed.2d 1176 (1968).

■ Additionally, the Court is of the opinion that the implied license theory is further grounds upon which to resolve the case at bar. Principles of contract law are generally applicable in the construction of copyright assignments, licenses and other transfers of rights.[2] Any reservation of rights or the transfer of anything less than the totality renders the grant a license rather than an assignment. *Hirshon v. United Artists Corp.*, 100 U.S.App.D.C. 217, 220,

---

2. See, *Gordon v. Vincent Youmans, Inc.*, 358 F.2d 261, 271 (2d Cir. 1965) (dissenting opinion).

243 F.2d 640, 643 (1957); *Hiawatha Card Co. v. Colourpicture Publishers, Inc.,* 255 F.Supp. 1015, 1019 (E.D.Mich.1966); *First Financial Marketing Services Group, Inc. v. Field Promotions, Inc.,* 286 F.Supp. 295, 298 (S.D.N.Y.1968). Here, Mr. Rau transferred something less than the entire copyright to Mr. Pruitt.

 Key Maps gave Mr. Pruitt an implied license to reproduce the map for the limited purpose of the Fire Zone Map and therefore Mr. Pruitt did not infringe the copyright of Key Maps, Inc. Plaintiff admits that Mr. Rau, chief executive officer of Key Maps, Inc., advised Defendant Pruitt to have the County Engineers Office draw the fire zones on the copyrighted "Thoroughfare Map." Plaintiff also admits that it sold the "Thoroughfare Map" to Mr. Pruitt for that purpose.

 There is no evidence in the case that the Plaintiff ever withdrew its permission to use the composite map, not even after Pruitt cancelled the purchase order with Key Maps, Inc. Therefore it was reasonable for Defendant Pruitt to believe that he had permission to order a reproduction of the composite map, from someone other than the Plaintiff after a six week delay by the Plaintiff, for the limited purpose of the Fire Zone Map. Key Maps' informal oral authorization that Defendant Pruitt could reproduce the composite map was, under the totality of the circumstances, broad enough to include an implied license to get the map reproduced by someone other than the Plaintiff when Plaintiff's delay became unreasonable. *See, Royal v. Radio Corporation of America, RCA–Victor Division, et al.,* 107 USPQ 173 (S.D.N.Y.1955).

For the foregoing reasons, the Court concludes that the copyright of the Plaintiff, Key Maps, Inc., has not been infringed. The Court does not reach the issues of res judicata and sovereign immunity because of the resolution of this cause of action based upon the application of the "fair use" doctrine and the implied license theory.

The Clerk shall file this Memorandum Opinion and shall provide counsel for all parties with a true copy.