NEWPORT–MESA UNIFIED SCHOOL DISTRICT, Plaintiff,

v.

STATE OF CALIFORNIA DEPARTMENT OF EDUCATION et al., Defendants.

No. SACV 04–512–GLT (ES).

United States District Court, C.D. California, Southern Division.

May 24, 2005.

John E. Hayashida, Parker & Covert, Tustin, Cynthia J. Larsen, Orrick Herrington & Sutcliffe (Intervenor Plaintiff), Sacramento, CA, for plaintiff.

Jack H. Anthony, Law Offices, Newport Beach, Rebecca Phillips Freie, Esq., (California Dept. Of Education), Sacramento, CA, for defendants.

## ORDER ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

TAYLOR, District Judge.

On apparent first impression, and contrary to the body of law on competitive admission testing, the Court holds a state statute requiring copies of test protocols to be provided to parents of special education students falls within acceptable "fair use" under federal copyright law, and the federal copyright law does not preempt the state statute.

## I. BACKGROUND

California Education Code section 56504 provides parents of special education students may have copies of their child's test protocols.[1] Defendant Jack Anthony's son is a seven-year-old with special education needs who lives in Plaintiff Newport–Mesa Unified School District. Mr. Anthony requested copies of his son's test protocols before a scheduled Individualized Education Program ("IEP") meeting. The District declined to provide him with the copyrighted test protocol for the Woodcock–Johnson Test of Achievement III.

Mr. Anthony filed a complaint with Defendant California Department of Education, which found the District out of compliance with California Education Code section 56504 by failing to provide Mr. Anthony with records within five days of his request. The Department ordered the District to revise its policies and procedures on student record requests to comply with section 56504 and to send it a copy of the new written policy within sixty days. The Department denied a request for reconsideration of this compliance report. Plaintiff brought the matter to this Court, contending United States copyright law prevents it from providing copies of copyrighted test protocols.

The District requested a declaration of its rights under copyright law and an injunction to prevent the Department from enforcing its compliance report. At the Court's invitation, Harcourt Assessment,

1. All statutory references are to the California Education Code unless otherwise stated.

Inc., the publisher and copyright owner of the Weschler Intelligence Scale for Children–III, and Riverside Publishing Co., the publisher and copyright owner of the Woodcock–Johnson III, intervened in the case to assert the copyright interest.[2]

After an early hearing, the parties held lengthy conferences to create a plan accommodating both interests: providing adequate information to special education parents under the state's section 56504, while safeguarding protected works under federal copyright law. Ultimately, the parties failed to work out a plan, and the Court now rules on all parties' cross-motions for summary judgment.

## II. *DISCUSSION*

### A. *School District's Standing*

Defendants challenge the District's standing to sue for a claimed copyright violation. The District sues in its own right as a party that fears violating the copyright law by distributing another party's copyrighted material. The Court is satisfied the District has standing to assert its own interest in avoiding civil liability for copyright infringement.[3]

To have standing to bring a declaratory relief action, the plaintiff must show "under all the circumstances of the case, there is a substantial controversy between parties having adverse legal interests, and the controversy is of sufficient immediacy and reality to warrant declaratory relief." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 (9th Cir.1989). For copyright matters, this requirement is satisfied if the plaintiff has a " 'real and reasonable apprehension' " it will be subject to liability if it continues to engage in allegedly infringing

conduct. *Id.* at 1555–56 (quoting a patent case, *Societe de Conditionnement v. Hunter Eng'g Co.*, 655 F.2d 938, 944 (9th Cir. 1981), and applying it in the copyright context). The District has made this showing here.

The threat to the District of future injury is both " 'real and immediate.' " *Am.-Arab Anti–Discrimination Comm. v. Thornburgh*, 970 F.2d 501, 507 (9th Cir. 1991) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 102, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983)). If the Department enforces its compliance report, the District will have to give a copy of the test protocol to Mr. Anthony or lose state funding. If it distributes a copy, it risks being a copyright infringer, liable to the copyright owner for actual or statutory damages. 17 U.S.C. §§ 501, 504 (1996 & Supp.2005).

The damage threat is real and immediate, not merely hypothetical or conjectural. *See Thornburgh*, 970 F.2d at 507 (quoting *O'Shea v. Littleton*, 414 U.S. 488, 494, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974)). The test publishers have intervened in this action and have asserted that giving a copy of test protocols to parents of special education students is not fair use. They have sent a letter to the District stating they would consider any failure to maintain confidentiality of their test materials as a contractual violation subjecting the District to liability. By intervening, the publishers have shown their willingness to litigate to protect their interests. *See Virginia v. Am. Booksellers Ass'n*, 484 U.S. 383, 392, 108 S.Ct. 636, 98 L.Ed.2d 782 (1988) (plaintiffs identified a sufficient threatened or actual injury when the challenged law was "aimed directly at plaintiffs, who, if their interpretation of the

---

**2.** Plaintiff and Plaintiffs–Interveners also assert a trade secret interest in the test protocols under state law and common law. That interest is not part of these cross-motions.

**3.** The Court would be concerned about deciding copyright issues unless the copyright owner was also a party to the case. Here, the owner has intervened.

statute is correct, will have to take significant and costly compliance measures or risk criminal prosecution").

To have standing, the District need not first copy and distribute the test protocols and wait for the publishers to sue. *Thornburgh*, 970 F.2d at 508 ("It is not necessary that [it] currently be subject to the challenged provisions in order to have standing; nor need [it] actually commit the forbidden provisions" to establish standing). The District has standing now.

B. *Fair Use*

California Education Code section 56504 states, in the context of special education, "[t]he parent shall have the right and opportunity to examine all school records of the child and to receive copies pursuant to this section ... within five days after such request is made by the parent, either orally or in writing."[4]  At the same time, federal copyright law grants copyright owners the exclusive right to copy and distribute copies of copyrighted works. 17 U.S.C. § 106(1), (3) (1996).  This case presents a clash of those two valid but competing interests.  The central issue is whether the doctrine of "fair use" avoids preemption of California Education Code section 56504 by the federal copyright law.

■ The parties agree the test protocols sought by Mr. Anthony are "school records" under section 56504 because, after students write answers on the test protocols, they are identifiable with the students.[5]  The parties do not dispute the test

protocols, other than the students' answers, are copyrighted works.

■ The small body of law on the topic of fair use of tests has uniformly indicated copying or distribution of copyrighted standardized tests is *not* "fair use" under federal copyright law. *See Chicago Bd. of Educ. v. Substance, Inc.*, 354 F.3d 624 (7th Cir.2003) (six Chicago Academic Standards Exams published in newspaper); *Ass'n of Am. Med. Colleges v. Cuomo*, 928 F.2d 519 (2d Cir.1991) (state statute required providing copy of standardized Medical College Admission Test ("MCAT"), a competitive admission test); *Educ. Testing Services v. Katzman*, 793 F.2d 533 (3d Cir.1986) (test preparation company copied tests to prepare students); *Educ. Testing Service v. Simon*, 95 F.Supp.2d 1081 (C.D.Cal.1999) (test preparation company copied tests to prepare students); *Coll. Entrance Examination Bd. v. Pataki*, 889 F.Supp. 554 (N.D.N.Y.1995) (state statute required providing copy of standardized competitive admissions tests); *Ass'n of Am. Med. Colleges v. Mikaelian*, 571 F.Supp. 144 (E.D.Pa.1983) (test preparation company copied tests to prepare students).

However, these cases involved standardized competitive admission testing where future test-takers were given access to the tests before taking them.  For this and other reasons, the situation presented in this case is quite different, and this line of cases is not applicable here.

4. Federal regulations implementing the Individuals with Disabilities Education Act have a similar provision.  Parents are permitted "to inspect and review any education records relating to their children." 34 C.F.R. § 300.562(a) (2004).  The federal right to inspect and review includes "[t]he right to request that the agency provide copies of the records containing the information if failure to provide those copies would effectively prevent the parent from exercising the right to inspect and review the records." *Id.* § 300.562(b)(2).

5. Test protocols generally include score sheets on which students mark their answers and tables on which examiners calculate the students' scores.  Test protocols also can include the "prompts" of the test questions and instructions for the test administrators.

The Court finds giving a copy of the test protocols to parents of special education students falls within 17 U.S.C. § 107, commonly referred to as the "fair use doctrine."

■ Fair use is a mixed question of law and fact that may be decided on summary judgment. *Worldwide Church of God v. Phila. Church of God, Inc.*, 227 F.3d 1110, 1115 (9th Cir.2000).

> If there are no genuine issues of material fact, or if, even after resolving all issues in favor of the opposing party, a reasonable trier of fact can reach only one conclusion, a court may conclude as a matter of law whether the challenged use qualifies as a fair use of the copyrighted work.

*Id.* (citing *Hustler Magazine, Inc. v. Moral Majority, Inc.*, 796 F.2d 1148, 1150–51 (9th Cir.1986)).

Under the fair use doctrine, copying a copyrighted work "for purposes such as criticism, comment, news reporting, teaching (including multiple copies for classroom use), scholarship, or research," is a fair use of the copyrighted work and is not a copyright infringement. 17 U.S.C. § 107 (1996). The doctrine is necessary "to fulfill copyright's very purpose, '[t]o promote the Progress of Science and useful Arts ....'" *Campbell v. Acuff–Rose Music, Inc.*, 510 U.S. 569, 575, 114 S.Ct. 1164, 127 L.Ed.2d 500 (1994) (alterations in original) (quoting U.S. Const. art. I, § 8, cl. 8); *see also Harper & Row, Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 545, 105 S.Ct. 2218, 85 L.Ed.2d 588 (1985) (stating "copyright is intended to increase and not to impede the harvest of knowledge").

■ The fair use doctrine " 'is an equitable rule of reason.' " *Harper & Row*, 471 U.S. at 560, 105 S.Ct. 2218 (quoting House Report, at 65, U.S.Code Cong. & Admin. News 1976, p. 5678). It " 'permits [and requires] courts to avoid rigid application of the copyright statute when,

on occasion, it would stifle the very creativity which that law is designed to foster.' " *Campbell*, 510 U.S. at 577, 114 S.Ct. 1164 (alteration in original) (quoting *Stewart v. Abend*, 495 U.S. 207, 236, 110 S.Ct. 1750, 109 L.Ed.2d 184 (1990)). Factors to be considered include, but are not limited to:

> (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
>
> (2) the nature of the copyrighted work;
>
> (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
>
> (4) the effect of the use upon the potential market for or value of the copyrighted work.

17 U.S.C. § 107. These and other elements are not considered in isolation from each other, but are weighed together in light of the purposes of copyright. *Campbell*, 510 U.S. at 577–78, 114 S.Ct. 1164. The fair use analysis "is not to be simplified with bright-line rules" and requires a case-by-case analysis. *Id.* at 577, 114 S.Ct. 1164.

#### 1. *Purpose and Character of Use*

Mr. Anthony's purpose is an independent educational evaluation of his son's special education needs and abilities to place him in an appropriate educational program. This is a nonprofit educational use not for commercial gain. Unlike commercial use of copyrighted standardized test questions, Mr. Anthony's purpose weighs in favor of finding fair use. *See Katzman*, 793 F.2d at 543 (finding Princeton Review's use of copyrighted Scholastic Aptitude Test ("SAT") questions to prepare students for the test in exchange for a fee was "highly commercial" and weighed against fair use).

■ Noncommercial uses to broaden a person's understanding of an issue can be fair use. *See Sony Corp. of Am. v. Universal City Studios, Inc.,* 464 U.S. 417, 455 n. 40, 104 S.Ct. 774, 78 L.Ed.2d 574 (1984) (stating "a teacher who copies for the sake of broadening his personal understanding of his specialty[; o]r a legislator who copies for the sake of broadening her understanding of what her constituents are watching; or a constituent who copies a news program to help make a decision on how to vote" are examples of fair use). Here, Mr. Anthony seeks to broaden his understanding, and the understanding of experts he may consult, of his son's special educational needs.

■ "[C]ommercial or nonprofit educational purpose of a work is only one element of the first factor enquiry into its purpose and character." *Campbell,* 510 U.S. at 584, 114 S.Ct. 1164. The Court also considers whether use of the work is transformative. *Id.* at 578–79, 114 S.Ct. 1164. A work is transformative if it "adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message." *Id.* at 579, 114 S.Ct. 1164. Transformative works "lie at the heart of the fair use doctrine's guarantee of breathing space within the confines of copyright, and the more transformative the new work, the less will be the significance of other factors, like commercialism, that may weigh against a finding of fair use." *Id.*

Here, copies of test protocols with answers are transformative. Section 56504 does not permit parents to have copies of the test protocols before the children have taken the tests. Such copies would not be transformative because they would be identical reproductions of the copyrighted test material. *See Pataki,* 889 F.Supp. at 568 (finding disclosure of standardized admissions test questions was non-transformative). The only copies implicated by section 56504, and the only copies at issue in this case, are those identifiable with a student after the student has taken the test. The copies, containing the students' answers, have a different character than the copyrighted material standing alone.

■ Even if not transformative, copying can be fair use when it is in the public interest. *See, e.g., Sony,* 464 U.S. at 454, 455 n. 40, 104 S.Ct. 774 (holding time-shifting by taping a television broadcast for later viewing was fair use, in part because it "yields societal benefits," and stating "[m]aking a copy of a copyrighted work for the convenience of a blind person is … an example of fair use"); *Am. Geophysical Union v. Texaco Inc.,* 60 F.3d 913, 922 (2d Cir.1994) ("[C]ourts are more willing to find a secondary use fair when it produces a value that benefits the broader public interest."); *Key Maps, Inc. v. Pruitt,* 470 F.Supp. 33, 37–38 (S.D.Tex. 1978) (ruling a county fire marshal's copying of fire zone maps was fair use in light of the public interest in fire prevention). Here, there is a legislated public interest in the appropriate education of special education students. This interest is advanced by providing copies of completed test protocols to parents to ensure their effective involvement in their children's education.[6]

### 2. *Nature of Copyrighted Work*

■ Under the second fair use factor, the nature of the copyrighted work is creative rather than informational. "[D]evelopment of the test questions as well as their compilation in a particular test form

---

6. Under section 56504, parents also may examine the original test protocols. The federal Family Educational Rights and Privacy Act of 1974 similarly allows parents to inspect and review education records "directly related to a student," including test protocols. 20 U.S.C. § 1232g(a)(1)(A), (a)(4)(A) (2000).

is a 'creative, imaginative, and original' process." *Pataki,* 889 F.Supp. at 569 (quoting *Cuomo,* 928 F.2d at 524). This ordinarily would weigh against finding fair use. *See A & M Records, Inc. v. Napster, Inc.,* 239 F.3d 1004, 1016 (9th Cir.2001). But, with the addition of a student's answers, the questions and answers are informational in nature, which weighs in favor of fair use.

The distinction between published and unpublished works, often analyzed under the second fair use factor, *see Harper & Row,* 471 U.S. at 564, 105 S.Ct. 2218, is not particularly useful here. The test protocols are "published" in the sense that the public has access to them. Students use them to take the tests, and parents are allowed to examine the original completed test protocols. But, they are "unpublished" in the sense that the test publishers take steps to ensure their secrecy. Test protocols do not fit the "published/unpublished" framework. *Cf.* Robert A. Kreiss, *Copyright Fair Use of Standardized Tests,* 48 Rutgers L.Rev. 1043, 1071–72 (1996) (arguing for standardized tests, "the appropriate issue is whether the copyright owner is commercializing the work, not whether the work is published").

### 3. *Amount Used*

■ Only part of the entire copyrighted test—portions identifiable with a student—is copied for parents under section 56504. This weighs in favor of fair use. The test publishers argue the copies include a large portion of, or all of, the copyrighted test material because test answers are integrated with the questions on test protocols. Even so, the copying of an entire work would not necessarily preclude fair use. *Hustler Magazine, Inc. v. Moral Majority, Inc.,* 796 F.2d 1148, 1155 (9th Cir.1986); *see also Sony,* 464 U.S. at 456, 104 S.Ct. 774 (finding copying entire television broadcasts for later viewing is fair use). The amount copied of the copyrighted test material is no more than necessary to see the students' answers and determine whether they were evaluated properly. The amount copied is "reasonable in relation to the purpose of the copying," to assess the students' educational needs. *Campbell,* 510 U.S. at 586, 114 S.Ct. 1164.

### 4. *Market Effect*

It is important to consider whether the potential market for the tests will be substantially affected if parents of special education students receive copies of their child's test protocol. *Campbell,* 510 U.S. at 590, 114 S.Ct. 1164 (considering " 'whether unrestricted and widespread conduct of the sort engaged in by the defendant … would result in a substantially adverse impact on the potential market' for the original") (omission in original) (quoting 3 M. Nimmer & D. Nimmer, *Nimmer on Copyright* § 13.05[A][4], at 13–102.61 (1993)). The parties agree widespread public access to the test protocols, if it existed, could have a detrimental effect on the tests' market value.

No evidence has been presented indicating there is a substantial risk of widespread public access or an adverse market effect. In fact, the showing is to the contrary. Section 56504 does not provide widespread public access, or access by future test-taking students, but only authorizes receipt of copies by parents of special education students. Since at least 1983 it has been the Department's policy that parents may receive copies of their student's test protocols as fair use under 17 U.S.C. § 107. There is no indication that, during that time, parents have taken improper advantage of the protocols' availability or a publisher has had to re-standardize the protocols because of public access.

Concerns of a compromised market, or potential distribution to competitors or parents of children who have not yet taken

the tests, are conclusory and not supported by evidence. The Court concludes there is a showing of no "meaningful likelihood" of an adverse market effect if parents continue to receive test protocols under section 56504. *Sony*, 464 U.S. at 451, 104 S.Ct. 774 (test is meaningful likelihood of future harm). If, in the future, an adverse market effect materializes, the fair use analysis can be reviewed.

### 5. *Other Factors*

Consideration of other fair use factors further supports a finding of fair use. Parents such as Mr. Anthony already may examine the test protocols in the presence of a school official. Providing a copy is more like the time-shifting found permissible in *Sony* than the disclosure of secure test information found impermissible in *Pataki*. Compare *Sony*, 464 U.S. at 449, 104 S.Ct. 774 (stating time-shifting enables a viewer to see a work "he had been invited to witness in its entirety free of charge"), *with Pataki*, 889 F.Supp. at 571 (comparing *Sony* to a case in which the test publishers "have done everything they can to ensure that the test-taking public not gain access to ... copyrighted materials").

### 6. *Conclusion*

The Court concludes a school giving parents of special education students copies of their children's test protocols when requested under California Education Code section 56504 is a fair use under 17 U.S.C. § 107. In order to minimize the risk of improper use, the District may choose to use appropriate safeguards, such as requiring a review by parents of the original test protocols before obtaining a copy, a written request for a copy, a nondisclosure or confidentiality agreement, or other reasonable measures.

The more appropriate outcome of this case is apparent to all. In order to avoid a "fair use" analysis whenever a district releases documents, and to protect California's school districts from fear of violating federal law, the California legislature should update section 56504 with appropriate standards to protect legitimate copyright concerns, while affording the important disclosure protections for parents of special education students the legislature intended. This should not be a difficult task.

## III. *DISPOSITION*

Plaintiff's and Plaintiffs–Interveners' motion for summary judgment is DENIED. Defendants' motion for summary judgment is GRANTED.